## Nickel Mine Brook Associates *v.*
## Joseph E. Sakal, P.C.
### (14105)

Peters, C. J., Shea, Callahan, Glass, Covello, Hull and Borden, Js.

Argued December 4, 1990—decision released February 5, 1991

*Thomas J. Weihing,* with whom were *John T. Bochanis* and *Joseph E. Sakal,* for the appellant (defendant).

*Richard F. Connors,* for the appellee (plaintiff).

Callahan, J. The sole issue presented by this appeal is whether an attorney who represents a client in obtaining a zoning change and in other matters relating to certain real property is entitled to file a mechanic's lien under General Statutes § 49-33.[1] We conclude that attorneys performing such services are not included among those entitled to file mechanic's liens.

---

[1] General Statutes (Rev. to 1973) § 49-33, as amended by Public Acts 1974, No. 74-310, provides in pertinent part: "mechanic's lien. precedence.

The facts are not in dispute. The defendant, Joseph E. Sakal, P.C., is a law firm that performed legal services related to a 100 acre parcel of land in Seymour owned by the plaintiff, Nickel Mine Brook Associates, a general partnership. These services, which were provided between February, 1986, and January, 1990, involved zoning, land planning and related matters.[2] The defendant's bill for the services rendered was $62,195. The defendant timely filed a mechanic's lien against the plaintiff's parcel of land to secure payment for the services that had been provided. The plaintiff filed an application to discharge or reduce the lien pursuant to General Statutes § 49-35a.[3] The trial court

RIGHTS OF SUBCONTRACTORS. (a) If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances *or in the improvement of any lot or in the site development or subdivision of any plot of land,* and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, *or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided,* or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands *or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land,* is subject to the payment of the claim." (Emphasis added.)

[2] The services provided by the defendant included the following: (1) preparing and presenting zoning applications to the town of Seymour zoning commission in order to change the zoning designation of portions of the land; (2) representing the plaintiff in discussions with the town engineer and the town planner; (3) obtaining and renewing a permit authorizing the plaintiff to operate a quarry on the site; and (4) appearing before inland wetlands and zoning agencies for subdivision of the portion of the land zoned residential. The plaintiff sought the zoning change in conjunction with its unsuccessful effort to sell or lease a portion of the land.

[3] General Statutes § 49-35a provides in pertinent part: "APPLICATION FOR REDUCTION OR DISCHARGE. FORMS. HEARING. ENTRY FEE. (a) Whenever one or more mechanics' liens are placed upon any real estate pursuant to sections 49-33, 49-34, 49-35 and 49-38, the owner of the real estate . . . may make application . . . to the superior court . . . that a hearing or hearings be held to determine whether the lien or liens should be discharged or reduced."

granted the application, concluding that § 49-33 was not intended to protect claims by attorneys. The defendant appealed to the Appellate Court, and we transferred the matter to this court pursuant to Practice Book § 4023. We now affirm the judgment of the trial court.

Section 49-33 (a) provides that "[i]f any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or *in the improvement of any lot or in the site development or subdivision of any plot of land* . . . the building . . . or the lot or . . . the plot of land, is subject to the payment of the claim." (Emphasis added.) The dispositive issue in this case is whether the legislature intended to include attorneys performing services for clients in connection with the rezoning of land and related real estate matters among the persons entitled to file mechanic's liens when it expanded the scope of § 49-33 in 1974 by adding the phrase "or in the improvement of any lot or in the site development or subdivision of any plot of land." See Public Acts 1974, No. 74-310.

The defendant contends that the legal services it performed for the plaintiff constitute services rendered in the improvement, the site development, and the subdivision of the property, as these terms are used in § 49-33 (a). It claims that because the statute does not exclude attorneys from the class of persons entitled to file mechanic's liens, the services it provided fall within the purview of the statute when it is interpreted liberally. The plaintiff asserts that the trial court properly ruled that the defendant could not file a mechanic's lien because the 1974 amendment was not intended to expand the scope of § 49-33 (a) to include persons whose services do not enhance the property in some physical

manner or lay the groundwork for the physical enhancement of the property. We agree that the 1974 amendment to § 49-33 does not extend the benefits of the mechanic's lien statute to the defendant, but our interpretation of the amended statute does not require us to address whether the services rendered must always be connected to some physical enhancement of the property in order to fall within the scope of § 49-33 (a).

The starting point in any case involving a question of statutory construction must be the language used by the legislature. *King* v. *Board of Education,* 203 Conn. 324, 332, 524 A.2d 1131 (1987); *Verdon* v. *Transamerica Ins. Co.,* 187 Conn. 363, 366, 446 A.2d 3 (1982). " 'Where the words of a statute fail to indicate clearly whether the provision applies in certain circumstances, it must be construed by this court . . . .' *Board of Trustees* v. *Freedom of Information Commission,* 181 Conn. 544, 550, 436 A.2d 266 (1980). Under our rules of statutory construction, this court is to be guided by the language, purpose and legislative history of the statute in question." *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 405, 528 A.2d 805 (1987).

The guidelines for interpreting mechanic's lien legislation are well established. Although the mechanic's lien statute creates a statutory right in derogation of the common law; *Camputaro* v. *Stuart Hardwood Corporation,* 180 Conn. 545, 550, 429 A.2d 796 (1980); *Gruss* v. *Miskinis,* 130 Conn. 367, 370, 34 A.2d 600 (1943); its provisions should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials. *H & S Torrington Associates* v. *Lutz Engineering Co.,* 185 Conn. 549, 553, 441 A.2d 171 (1981); *Henry F. Raab Connecticut, Inc.* v. *J. W. Fisher Co.,* 183 Conn. 108, 115, 438

A.2d 834 (1981). Our interpretation, however, may not depart from reasonable compliance with the specific terms of the statute under the guise of a liberal construction. *Camputaro* v. *Stuart Hardwood Corporation,* supra, 551; *Stone* v. *Rosenfield,* 141 Conn. 188, 191, 104 A.2d 545 (1954). Finally, "the provisions of our statute differ sufficiently from the mechanic's lien legislation of other states so that precedents elsewhere are of limited utility in the interpretation of our act."[4] *Camputaro* v. *Stuart Hardwood Corporation,* supra; *New Haven Orphan Asylum* v. *Haggerty Co.,* 108 Conn. 232, 236, 142 A. 847 (1928).

This court has previously examined the effect of the 1974 amendment to § 49-33 (a). In *Camputaro* v. *Stuart Hardwood Corporation,* supra, we considered whether a contractor's work in road building and site preparation was lienable under § 49-33 prior to the 1974 amendment. We concluded that the contractor was not entitled to file a mechanic's lien because "cases construing the language of [§ 49-33 prior to the 1974 amendment] have required, as a condition of lienability, that the work done be incorporated in or utilized in the building (or the appurtenance) to be constructed, raised, removed or repaired." Id., 552. We concluded that one of the purposes of the 1974 amendment was to eliminate this requirement that the work be incorporated or utilized in a building or appurtenance. Id., 553–54. Finally, we noted that "[a]lthough the legislative history of the amended § 49-33 is, as is often true,

---

[4] Our research has uncovered only one case in which a similar issue has been addressed. In *Sooner Federal Savings & Loan Assn.* v. *Mobley,* 645 P.2d 1000, 1003–1004 (Okla. 1981), an attorney who secured the marital home for the husband in a divorce proceeding was unsuccessful in claiming that he was entitled to a mechanic's lien for his services. This case provides little guidance, however, because it involved a different type of legal service than that in the present case.

somewhat murky, it is consistent with an intention to expand the coverage of the mechanic's lien."[5] Id., 554.

As a threshold matter, we note that the language of the 1974 amendment appears to have extended the coverage of § 49-33 to two *distinct* types of services: (1) services rendered in the improvement of any lot; and (2) services rendered in the site development or subdivision of any plot of land. Although the defendant claims that the services it provided fall within both of these categories, it relies upon this apparent distinction in arguing that we must interpret these categories separately in determining what types of services fall within the purview of § 49-33 (a). Our review of the legislative history leads us to conclude otherwise.

The original version of Senate Bill No. 275, which became Public Acts 1974, No. 74-310, extended the scope of § 49-33 (a) only to services rendered "in the

---

[5] After reviewing the legislative history, we stated that "Public Acts 1974, No. 74-310 expanded the scope of General Statutes § 49-33 to include the terms 'the improvement of any lot' and 'the site development or subdivision of any plot of land.' It is the first of these additions, 'the improvement of any lot,' that is at issue in the present case. In commenting on an amendment to the bill, which was subsequently enacted as Public Acts 1974, No. 74-310, the reporting committee chairman in the House of Representatives stated: 'We still have an extension of the mechanic's lien even though we don't have an extension of the time to file it. You can file it against the property or sub-division whereas heretofore you could only file it against the house that was being worked on, the building.' And again, in response to the question, 'Does he contend that it's the amendment that extends the applicability of the land or is it the bill itself . . .' the reporting committee chairman, Representative Newman responded: 'The bill, of course, sir.' 17 H.R. Proc., Pt. 9, 1974 Sess., pp. 4138, 4140. Compare the comments of the reporting committee chairman in the Senate, Senator Rome, who stated: 'The bill now as amended would provide that sub-dividers of land, persons who might also be doing site work on the land would have lien rights. The question is, under the existing court adjudications, whether or not that (sic) have or have not those rights. This clearly spells it out. They do . . . .' 17 S. Proc., Pt. 3, 1974 Sess., p. 1338." *Camputaro* v. *Stuart Hardwood Corporation,* 180 Conn. 545, 554–55 n.6, 429 A.2d 796 (1980).

site development or subdivision of any plot of land." The language referring to "the improvement of any lot" was adopted as House Amendment A. Conn. House Journal, May 1, 1974, pp. 1086–87; 17 H.R. Proc., Pt. 10, 1974 Sess., pp. 4970–73. The legislative history indicates that the purpose of this amendment to Senate Bill No. 275 was not to create a distinct category of services for which one could file a mechanic's lien, but rather to avoid potential problems for title searchers by restricting the ability of one who provides services for only a single lot to file a mechanic's lien against an entire subdivision.[6] 17 H.R. Proc., Pt. 10, 1974 Sess., pp. 4970–71. We conclude that the phrase "improvement of any lot" was intended to include the same types of services embraced by the phrase "site development or subdivision of any plot of land." The only distinction intended by the legislature was between services benefiting particular lots and those benefiting the subdivision as a whole.[7]

---

[6] Representative Hoyte G. Brown, Jr., the sponsor of House Amendment A to Senate Bill No. 275, stated that the amendment "restricts the filing of the mechanic's lien by a contractor. A contractor, such as a surveyor, can file such a lien against the lot of the subdivision on which he has rendered services or furnished materials. Under the bill as it appears in the files the contractor could file his lien against any or all lots of the subdivision. This power of the contractor could cause problems for people doing title search. A title search could show no lien when in fact a lien does exist against the lot being sold. The amendment allows title searchers to request waivers of any lien from the contractors working on the lot being sold. Under the bill in the file the title searcher must receive waivers from any contractor working on any and all the lots of the subdivision." 17 H.R. Proc., Pt. 10, 1974 Sess., pp. 4970–71.

Representative Carl R. Ajello, added that "[s]ome of us were concerned that you could have an entire subdivision land [sic] and placed in default on its mortgage and otherwise interfere with its credit standing by virtue of the default of someone who was taking only a minuscule part in the building of one project within the subdivision. At the same time recognizing that one who renders services in the layout or site improvement work should have the opportunity to lien the entire subdivision." Id., p. 4971.

[7] Further support for this conclusion is provided by the title of Senate Bill No. 275, which was, even *prior* to its amendment by House Amend-

In determining what types of services the legislature intended to include when it used the terms "improvement," "site development" and "subdivision," " '[t]he title of legislation when it is acted upon by the legislature is significant and often a valuable aid to construction . . . .' (Citations omitted.) *Miller* v. *Board of Education,* 166 Conn. 189, 194, 348 A.2d 584 (1974)." *Zichichi* v. *Middlesex Memorial Hospital,* supra. The title of Senate Bill No. 275 was "An Act Concerning *Mechanic's* Liens on Land Being Improved or Subdivided." (Emphasis added.) A "mechanic" is normally envisioned as a skilled worker who brings about a result by the use of tools, machines or equipment. See Random House Dictionary of the English Language (Unabridged Ed.). Moreover, there is a distinct difference between legal services and the types of services that we previously have indicated fall within the scope of § 49-33 (a). See, e.g., *Camputaro* v. *Stuart Hardwood Corporation,* supra, 553–54 (suggesting in dicta that road construction and grading of a building site are within the scope of § 49-33 after the 1974 amendment); *Stone* v. *Rosenfield,* supra, 192 (installation of permanent fixtures); *Marchetti* v. *Sleeper,* 100 Conn. 339, 342–43, 123 A. 845 (1924) (preparation of architectural plans actually used in the construction of a building); *Balch* v. *Chaffee,* 73 Conn. 318, 320–21, 47 A. 327 (1900) (construction of a well). Although this distinction is not conclusive in this case, it provides some evidence of the types of services for which one may file a mechanic's lien.

Further, the legislative history provides no support for the defendant's claim that the legal services it provided were intended to be included within the phrase

---

ment A, "An Act Concerning Mechanic's Liens on Land Being *Improved* or Subdivided." (Emphasis added.)

"site development or subdivision" of the property.[8]
There is no reference in the legislative history to attorneys, nor is there any evidence that the legislature intended to expand the scope of the mechanic's lien statute to include any type of legal services. Although the legislative history does not define clearly the scope of the 1974 amendment, references therein to surveyors and engineers who draft subdivision plans provide some evidence of the types of services that might be embraced by the amendment. 17 H.R. Proc., Pt. 10, 1974 Sess., pp. 4970–71, 4977–79.[9] These references

---

[8] The record is not clear as to whether the defendant actually sought or obtained approval for the subdivision of the property. For the purposes of our analysis, we can assume that the defendant did indeed provide legal services related to the subdivision of the land.

[9] See footnote 6, supra, for references to surveyors in the legislative history of the 1974 amendment.

Representative Thomas M. Kablik asked the following question concerning the effect of the language in Senate Bill No. 275 referring to the "subdivision" of a plot of land: "[A]t what point does this ability to lien commence. For instance, if the developer is in the process of preparing preliminary drawings on the subdivision . . . then he goes and makes his application but for one reason or another it's either turned down, or let's say it's turned down, his work, for instance, that was done from the time of application to the time of turn down . . . *for instance, an engineer who had designed the entire thing.* Would he then have a lien on the entire parcel even if the subdivision didn't occur?" (Emphasis added.) 17 H.R. Proc., Pt. 10, 1974 Sess., pp. 4977–78.

Representative Hoyte G. Brown, Jr., responded: "It's my opinion, yes. I want to double check that though." Id., p. 4978. There is no indication in the legislative history that Representative Brown later reached a different conclusion on this issue.

Although we note that the legislative history of Senate Bill No. 275 appears to indicate that, at least in certain circumstances, surveyors and engineers may file mechanic's liens, we do not address the nature of these circumstances. See *Sisk* v. *Zukowski,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 346699 (June 29, 1988); see generally annot., 87 A.L.R.2d 996.

The plaintiff argues that General Statutes § 49-33 (a) should be interpreted as including only those services which physically enhance the property or which lay the groundwork for physical enhancement. We decline to address the merits of such an interpretation of § 49-33 because it is not necessary to the resolution of the present case. When the issue becomes ripe for deci-

comport more with what one could accept as an expanded definition of a "mechanic." Given the distinct difference between the nature of services provided by lawyers, on the one hand, and surveyors and engineers on the other, we conclude that the 1974 amendment was not intended to allow the filing of mechanic's liens by attorneys providing assistance in zoning and other matters related to real estate.

The defendant also claims that its services resulted in an "improvement" of the land because the change in zoning enhanced the value of the land.[10] It contends that within the context of § 49-33, "improvement" means anything that increases the value of the land. Once again, however, neither the language of the 1974 amendment nor its legislative history indicates that the legislature intended to create such an open-ended test for which services are lienable under § 49-33 (a). We also note that, to the best of our knowledge, no state has allowed an attorney to file a mechanic's lien for legal services. We therefore decline to adopt so broad an interpretation of our mechanic's lien statute.

Our conclusion is further supported by a practical construction of the statute. " '[G]eneral words and phrases may be restricted in meaning to adapt their meaning to the subject-matter in reference to which they are used.' *Barber* v. *Morgan,* 89 Conn. 583, 588, 94 Atl. 984 [1915]." *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 211, 222, 27 A.2d 166 (1942). "In construing a statute, common sense must be used and courts must assume

---

sion in the framework of an actual controversy, we will have ample opportunity to determine the relationship between a physical enhancement test and the legislative history indicating that surveyors and engineers might have been intended to be eligible to file a mechanic's lien under the statute as amended in 1974.

[10] Although there is no evidence in the record concerning whether the zoning change actually did increase the value of the land, we will assume that it did for the purposes of our discussion.

that a reasonable and rational result was intended." *Kron* v. *Thelen,* 178 Conn. 189, 192, 423 A.2d 857 (1979). Interpreting the 1974 amendment as having expanded the scope of § 49-33 (a) to include legal services could lead to the filing of mechanic's liens by a wide range of parties who provide services to land developers, such as insurance agents, real estate agents who are instrumental in the purchase of land and advise as to its potential uses, and financial advisers such as bankers and accountants. Although as a general matter our mechanic's lien statute must be liberally construed; *H & S Torrington Associates* v. *Lutz Engineering Co.,* supra, 553; we refuse to adopt an interpretation of § 49-33 (a) that could lead to such a fundamental change in our mechanic's lien statute absent clear evidence that the legislature intended such a far reaching result.

The judgment is affirmed.

In this opinion the other justices concurred.