GEORGE S. HARKINS, TRUSTEE *v.* GIROUARD ESTATES, INC., ET AL.
(11260)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued March 22—decision released June 1, 1993

*Ridgely W. Brown,* with whom, on the brief, were *Heather M. Brown* and *Benjamin Gershberg,* for the appellant (defendant Darien Asphalt Paving, Inc.).

*Alexander H. Schwartz,* for the appellee (plaintiff).

FOTI, J. This appeal arises out of an action in which the plaintiff sought to foreclose a mortgage he held on five subdivision lots. The named defendant and the defendant James R. DeVito were defaulted for failure to disclose a defense. Darien Asphalt Paving, Inc., and Darien Asphalt Paving, Inc., doing business as F.G.B. Paving and Excavating Company (hereafter referred to as Darien) were permitted to intervene as defendants by virtue of their allegation that a mechanic's lien they held on the rights of access to the five lots had priority over the plaintiff's mortgage.

Darien now appeals from the trial court's judgment finding that the mechanic's lien in question does not encompass the property covered by the mortgage and, therefore, has no priority over it. Darien claims that the trial court (1) improperly extended the scope of its foreclosure judgment to include property interests either not mortgaged to the plaintiff or not included in the plaintiff's lis pendens, (2) improperly permitted the plaintiff to amend his complaint at trial to allege an easement by way of necessity, and (3) incorrectly found that an easement of necessity existed. We affirm the judgment of the trial court.

The record reveals the following facts. On March 29, 1989, the plaintiff loaned $750,000 to the defendants Girouard Estates, Inc. (Girouard), and James R. DeVito. As security for repayment of the note, Girouard granted the plaintiff a mortgage on five lots in the Girouard Estates subdivision in Norwalk. A mortgage deed was filed on the Norwalk land records on March 29, 1989. Along with the mortgage on the five

lots, the plaintiff was explicitly granted the "right to pass and repass the roadways" that are shown on two maps recorded in the Norwalk land records.[1] The maps describe the Girouard Estates subdivision, including the five lots mortgaged to the plaintiff, as well as the streets laid out to service the subdivision. Of the five mortgaged lots, three have no independent access to public roads outside the subdivision and, therefore, must gain such access through the roadways shown on the subdivision maps.

Following a default by the defendants Girouard and DeVito on payment of the loan, the plaintiff began an action to foreclose his mortgage on the five lots. The plaintiff's lis pendens, filed on the Norwalk land records on January 4, 1990, described the same five lots listed in his mortgage deed but did not describe any easements appurtenant to the lots. At the time the complaint was filed, Darien was not named as a defendant. The trial court later granted Darien's motion to be made a party defendant, however, based on Darien's alleged priority interest in the property mortgaged to the plaintiff by virtue of a mechanic's lien Darien had recorded before the plaintiff filed the lis pendens.

On March 19, 1992, the trial court granted a judgment of strict foreclosure in favor of the plaintiff. In its memorandum of decision, the court stated that, while the mortgage deed makes specific reference to the rights of access in which Darien claimed an interest, "there is no such provision in the mechanic's lien." Rather, the lien appeared "to have been filed on the

---

[1] The mortgage deed describes the property as "Lot Nos. 2, 8, 15, 17 and 24, on those certain maps entitled 'Subdivision of GIROUARD ESTATES Norwalk Connecticut' . . . which maps are on file in the Office of the Town Clerk of the City of Norwalk as Map Nos. 10612 and 10613. Reference hereto being made and had for a more particular description of said premises. TOGETHER WITH right to pass and repass the roadways as shown on said maps, for all legal purposes."

whole subdivision with certain lots including those covered by the mortgage excluded." The court noted that while Darien claimed that the rights of access are an integral part of the fee interest in each of the lots, this very argument defeated its claim. We agree.

The dispositive issue in this appeal is whether Darien's mechanic's lien encompassed property covered by the plaintiff's mortgage. Darien claims that the trial court improperly extended the scope of its judgment of strict foreclosure to include property interests either not mortgaged to the plaintiff or not included in the plaintiff's lis pendens. Darien bases this claim on its contention that the plaintiff is only entitled to foreclose the five lots specifically described in the mortgage deed and the lis pendens. Darien claims that although the lots were explicitly excepted from its mechanic's lien, the rights of access to the lots were not so excepted, and the trial court "purported to grant strict foreclosure over ways of access or over the roads themselves" without recognizing Darien's "priority as to the roads and access and easements."

The plaintiff, on the other hand, contends that he never sought to foreclose any interest he held in the roadways and that, contrary to Darien's assertion, the trial court did not grant the plaintiff strict foreclosure of any property other than the five lots themselves. Darien, in its reply brief, counters that the plaintiff did not pursue direct foreclosure of its rights of access granted in the mortgage deed because the roads were properly liened, and that to avoid the priority of the lien, the plaintiff claimed, instead, an easement of necessity.[2]

---

[2] At trial, the plaintiff was permitted to amend his complaint to make explicit the claim that his right to traverse the subdivision roadways was founded not only in the express easement contained in the mortgage deed but by virtue of an easement by necessity and an easement by reference to maps.

Some additional background information is necessary to better comprehend the parties' competing claims. In May, 1988, Girouard conveyed by mortgage deed twenty-six of the subdivision lots, together with roadways shown on map Nos. 10612 and 10613, to Norwalk Savings Society (bank) to secure a $2.5 million loan. That mortgage deed was recorded on May 31, 1988.

On March 14, 1989, Darien signed a contract with Girouard to build roads and other improvements in the Girouard Estates subdivision. The work began on March 20, 1989, and ended in August, 1989. Darien recorded its mechanic's lien on the Norwalk land records on October 13, 1989. The effective date of that lien related back to March 20, 1989.[3]

When Darien placed its lien on the property, however, Norwalk Savings had a priority interest in twenty-three of the subdivision lots,[4] as well as the roadways, by virtue of its previously recorded mortgage deed. On March 23, 1989, the bank quitclaimed its interest in the five lots that were later mortgaged by Girouard and DeVito to the plaintiff.

In September, 1990, following a default by Girouard and DeVito, the bank instituted an action to foreclose its mortgage. On July 22, 1992, the Superior Court in Stamford rendered a judgment of strict foreclosure in favor of the bank. Darien was defaulted in that action for failure to disclose a defense, the law days passed, and title to the property became absolute in the bank. As part of the judgment in that action, the trial court

---

[3] "Although General Statutes § 49-34 allows a mechanic's lienor a ninety day grace period within which to file in the town clerk's office, General Statutes § 49-33 (b) expressly provides that the priority of the lien relates back to the date the work commenced or material was brought to the work site." *Farmers & Mechanics Savings Bank* v. *Garofolo,* 219 Conn. 810, 817, 595 A.2d 341 (1991).

[4] The bank had previously released three of the twenty-six lots covered by its mortgage in June, 1988.

ordered that, in accordance with a stipulation between the bank and Darien, the "judgment entered in that action does not affect access to or the right to pass and re-pass over the roadways for all legal purposes" of the five lots that are the subject of the present action.[5] Both parties agree that this stipulation did nothing to diminish the fee interest of the bank in the roads themselves; its only purpose was to "preserve" whatever interests Darien might have in the rights of access to those roads. Darien did not appeal from that judgment and now concedes that it has no interest in those eighteen lots or the roadways, themselves, absolute title to which is now held by the bank.[6]

[5] The memorandum of decision stated: "The court . . . finds that the plaintiff, Norwalk Savings Society, released certain lots which were a part of the property known as Girouard Estates and which were initially secured by the mortgage which is being foreclosed in this action. These lots, being numbered 2, 8, 15, 17, and 24, were released together with the right to pass and repass the roadways as shown on Map Nos. 10612 and 10613 on file in the City of Norwalk Land Records for all legal purposes. The court finds that the release was effected by a quitclaim deed filed on March 29, 1989, in the city of Norwalk land records at volume 2318 at page 117. In accordance with the Stipulation between [Norwalk Savings Society] and the defendant, Darien Asphalt, Inc., d/b/a/ F.G.B. Paving and Construction Company, stated on the record at the time of the judgment hearing herein, Norwalk Savings Society acknowledges and the court orders that the judgment being entered in this action does not affect access to or the right to pass and repass over the roadways for all legal purposes enjoyed by the released Lots Nos. 2, 8, 15, 17 and 24."

[6] At oral argument on March 22, 1993, the following colloquy took place between Darien's counsel and this court:

"[Defense Counsel]: In addition to the briefing of this case, two motions to dismiss have been brought by the appellee, Harkins, because in the meantime the Norwalk Savings Society, which had a mortgage prior to each of the parties over the rest of the subdivision and the roadways, foreclosed by way of strict foreclosure its mortgage rights. . . .

"The Court: Including the roads?

"[Defense Counsel]: Including the roads, Your Honor, but specifically excluding any interest that we had in the roads that we constructed for which we filed a mechanic's lien.

"The Court: If Norwalk Savings Society executed a deed to the . . . city of Norwalk, conveying the roads to them, what's left?

"[Defense Counsel]: The rights that we have in the roads as to any interests that were outstanding and not included in the Norwalk Savings Soci-

Darien intervened in the present action, however, to claim that it still has a viable lien with respect to property covered by the plaintiff's mortgage on the five lots.[7] Because Darien's mechanic's lien was prior in time to the plaintiff's mortgage, the validity of its lien depends on whether the lien properly covers the property covered by the mortgage. To resolve this, we look first to the language of the lien itself.

Our review indicates that the first page of Darien's mechanic's lien states that Darien "furnished material and performed excavation, grading, paving, hauling and other related services in the lateration, improvement and addition to the site, buildings, and structure and site development located at Murray Street and Cranbury Road, being the same premises as appear on Map No. 10612 and Map 10613 in the land records of the Town of Norwalk . . . ." More detailed descriptions of the property are contained in an attached Schedule A.

Schedule A contains metes and bounds descriptions of the Girouard Estates subdivision. A clause following these property descriptions explicitly excepts from the scope of the lien certain of the subdivision lots, including the five lots that were subsequently mortgaged to the plaintiff.[8] At the beginning of trial, Darien

ety title. The Norwalk Savings Society title foreclosed the roads. It did not foreclose all the aspects of use of those roads, and some of those aspects relate to the lots in question. Those lots, in order to have access to public roads, have to go over these private roads."

[7] We note that a separate action against the plaintiff is still pending in the Superior Court in Stamford, in which Darien has *directly* sought a foreclosure of its mechanic's lien.

[8] The clause reads as follows: "Also excepting those certain pieces or parcels of land, situated in the City of Norwalk, County of Fairfield, and State of Connecticut and designated as Lot 1, Lot 2, Lot 3, Lot 4, Lot 5, and Lot 6, Lot 8, Lot 15, Lot 17 and Lot 24 as shown on map entitled 'Subdivision of GIROUARD ESTATES Norwalk, Connecticut Scale 1″=40′ June 17, 1986' . . . which maps are on file in the Office of the Town Clerk of the City of Norwalk as Map Nos. 10612 and 10613."

conceded that the lots themselves were excepted from the scope of the lien, and contended only that its lien encompassed certain rights of access to the subdivision roads which were appurtenant to these lots. After the plaintiff was permitted to amend his complaint, however, Darien amended its own position, to make the novel claim that its lien on the plaintiff's rights of access extended to the lots, themselves, because the right to pass and repass the roadways is an integral part of the lots.[9] At oral argument before this court, however, Darien retreated to its former position, stating that the only interests subject to its mechanic's lien were the rights of access.[10] In its memorandum of decision, the trial court found that "[w]hile the access roads appear on the maps for the whole subdivision and the defendant claims they are an integral part of the fee interest in each of the lots, the exclusion of the numbered lots

---

[9] After the trial court permitted the plaintiff to amend his complaint to allege an easement of necessity and an easement by implication with respect to the rights of access, the following discussion occurred between Darien's counsel and the court:

"[Defense Counsel]: I would like to make it clear on the record that we are claiming a direct interest in these lots that he's got here. So that—

"The Court: To what extent?

"[Defense Counsel]: To the full extent that the law permits. And—

"The Court: To what extent?

"[Defense Counsel]: To the extent that we have given a broad property description in our foreclosure action. That property . . . description could be construed to include these lots in question. . . . Now that they're claiming an easement by way of necessity and claiming that they are going to have a right to pass and repass over our property—

"The Court: Uh-huh.

"[Defense Counsel]:—we don't want to hang our hats simply on the access-way . . . ."

[10] "The Court: Your claim is over an access or easement way, right?

"[Defense Counsel]: Well, access, easement, and right to hook up to utilities that we created, Your Honor.

"The Court: But [Norwalk Savings Society] own[s] the title to the roads.

"[Defense Counsel]: They own the fee and we have a mechanic's lien . . .

"The Court: . . . You're claiming a priority on the easement outside the boundaries of the lots.

"[Defense Counsel]: Yes, Your Honor."

from the land would seem to include the access roads as integral parts of the fee interest. In other words, the very argument made by the defendant to claim the land not as priority applies as well to the excepted lots." We agree that Darien's claim must fail.

There is no question that the subdivision improvements that Darien performed were lienable. *Pomarico* v. *Gary Construction, Inc.,* 5 Conn. App. 106, 497 A.2d 70, cert. denied, 197 Conn. 816, 499 A.2d 1336 (1985). There is also no question that Darien could have placed a lien on the *entire subdivision,* including the five lots in question here, even though the five lots were quitclaimed before Darien actually recorded its lien. Id., 109-10. Such a lien would have attached to all of the lots in the subdivision and would have been prior to any subsequent encumbrances. In *Pomarico* v. *Gary Construction, Inc.,* supra, 109-10, we noted that "[w]hen General Statutes § 49-33 was amended in 1974, the mechanic's lien was extended to encompass claims for materials furnished or services rendered ' "in the improvement of any lot or in the site development or subdivision of any plot of land . . . ." ' *Camputaro* v. *Stuart Hardwood Corporation,* [180 Conn. 545, 553-54, 429 A.2d 796 (1980)]."[11] The contractor in *Pomarico* recorded a lien on March 14, 1983, covering site development work performed between September, 1982, and January, 1983. A blanket lien had been placed on thirteen lots, some of which had been sold

[11] General Statutes § 49-33 (a) provides in pertinent part: "If any person has a claim for more than ten dollars for materials furnished or services rendered . . . in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with . . . or by the consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for the owner in procuring labor or materials . . . the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim."

before the lien was recorded. The trial court determined that the lien was invalid because it failed to conform to the "lienable unit" requirement and failed to identify the particular premises against which the lien was claimed. We reversed, holding that the statute, as amended, eliminated the lienable unit requirement and finding that the lien fell "within the site development purview of General Statutes § 49-33 as amended." Id., 111. Had Darien, like the contractor in *Pomarico*, filed a blanket lien on the entire subdivision, there would have been a mechanic's lien attached to the five lots which was prior in time to the plaintiff's mortgage.

Darien, instead, explicitly excepted the plaintiff's five lots from the coverage of its lien. The validity of its lien, therefore, depends on whether it can properly claim an interest in the plaintiff's property by virtue of a lien covering only the rights of access to the lots. While the language of General Statutes § 49-33 (a) makes the roadwork Darien performed on the Girouard Estates subdivision *lienable,* § 49-33 (b) describes specifically the property that may be subject to such a lien.

The plain language of the § 49-33 (b) specifies that a lien for lot improvements or site development work performed by a contractor is a claim *"on the . . . lot or . . . on the plot of land."* (Emphasis added.) Elimination of the "lienable unit" requirement simply means that it is no longer necessary to lien a particular lot in a subdivision; the whole plot may be liened. Elimination of that requirement did nothing, however, to change the general rule that "[t]he real property against which a mechanic's lien may be enforced is any property which can be assigned, transferred, mortgaged, or sold under execution as a separate and distinct entity." 53 Am. Jur. 2d 777, Mechanics' Liens § 252 (1970). Rights of access to subdivision roadways fall into none of these categories. By explicitly exclud-

ing the five lots, Darien removed both the lots and any rights of access appurtenant to them from the scope of its lien.[12] Those access rights, if they existed at all, were not independently lienable.

Rights of access are, by nature, easements appurtenant to the land. "[A]n easement appurtenant . . . attaches to the land and every part of it." *Murphy, Inc.* v. *Westport,* 131 Conn. 292, 306, 40 A.2d 177 (1944). "An easement appurtenant lives with the land. It is a parasite which cannot exist without a particular parcel of realty. An appurtenant easement is incapable of existence separate and apart from the particular land to which it is annexed. . . . [An easement appurtenant] inheres in the land and cannot exist separate from it nor can it be converted into an easement in gross." 2 G. Thompson, Real Property (1980) § 322, pp. 63–64. An appurtenant easement cannot be conveyed by the party entitled to it separate from the land to which it is appurtenant. Id. Further, because of the incorporeal nature of an easement appurtenant, its owner cannot be disseized or otherwise ousted of it; he can only be disturbed or obstructed in its enjoyment. *Waterbury Trust Co.* v. *G. L. D. Realty Co.,* 121 Conn. 50, 53, 182 A.2d 466 (1936).

Whatever access rights the plaintiff had to roads in the Girouard Estates subdivision were appurtenant to his five lots. We need not decide whether the plaintiff had an express right to pass and repass the subdivision roads by virtue of the quitclaim deed from Girou-

---

[12] It is unclear why Darien elected to exclude these lots from the scope of its lien. Our decision in *Pomarico* v. *Gary Construction, Inc.,* 5 Conn. App. 106, 497 A.2d 70, cert. denied, 197 Conn. 816, 499 A.2d 1336 (1985), indicates that a contractor who performs site development services may properly lien an entire subdivision even though individual subdivision lots are conveyed between the time the contractor's work commences and its lien is recorded. The reason for this rule is obviously to prevent the developer from conveying all the lots in the subdivision during that period and thereby extinguishing the lien.

ard, or an implied easement over the roads by reference to maps, or an implied easement of necessity because some of the lots are landlocked. In *any* case, such an easement cannot be not subject to a mechanic's lien independent of a lien on the land to which it is appurtenant.[13]

The mechanic's lien filed by Darien explicitly removed from its scope a number of lots in the Girouard Estates subdivision, including the five lots mortgaged to the plaintiff. We strongly agree with Darien that the provisions of the mechanic's lien statute " 'should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials. . . . Our interpretation, however, may not depart from reasonable compliance with the specific terms of the statute under the guise of liberal construction.' (Citations omitted.) *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, 217 Conn. 361, 364, 585 A.2d 1210 (1991)." *First Constitution Bank* v. *Harbor Village Limited Partnership*, 31 Conn App. 15, 18, 622 A.2d 1063 (1992). We therefore conclude that the trial court properly found that the lien in question did not encompass any property covered by the plaintiff's mortgage.

Because our resolution of this issue is dispositive of Darien's appeal, we need not address its remaining claims.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] In his second motion to dismiss this appeal on mootness grounds, the plaintiff pointed out that Norwalk Savings Society recently quitclaimed to him the right to pass and repass the over the subdivision roads, to which Norwalk Savings Society holds absolute title. While this quitclaim did not render the present appeal moot, it does mean that even if the plaintiff previously had acquired no express or implied access rights over the roads, he has acquired them now.