CECI BROTHERS, INC. *v.* FIVE TWENTY-ONE
CORPORATION ET AL.
(AC 17426)

Foti, Lavery and Hennessy, Js.

Argued September 29, 1998—officially released February 16, 1999

*Leonard A. Fasano,* for the appellants (defendants).

*Andrew P. Nemiroff,* with whom, on the brief, was *Andrew K. Solow,* legal intern, for the appellee (plaintiff).

*Opinion*

LAVERY, J. The defendants appeal from the trial court's denial of their application to discharge a mechanic's lien placed on certain of their real property in Greenwich by the plaintiff, Ceci Brothers, Inc. On appeal, the defendants claim that the trial court improperly denied their application to discharge the mechanic's lien because the services performed by the plaintiff were not lienable under General Statutes § 49-33.[1] We agree with the defendants and, therefore, reverse the

---

[1] General Statutes § 49-33 (a) provides: "If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim."

trial court's decision denying the application to discharge.

The following pertinent facts are necessary to a resolution of the issue on appeal. On or about March 22, 1995, the plaintiff executed a "maintenance" agreement with the defendants, in which the plaintiff agreed to "perform any and all practices necessary to upgrade and maintain the landscape's healthy growth and attractive appearance at . . . [the defendant's residential property located] at 521 Round Hill Road [in] Greenwich."[2] In return for the plaintiff's services, the defendants agreed to pay the plaintiff $125,000 in eight monthly payments of $15,625.

On or about October 26, 1996, the plaintiff claims that a representative of the defendants terminated the agreement. The plaintiff contends that, at that time, the defendants owed an outstanding balance of $52,918.75. In November, 1995, the plaintiff filed a mechanic's lien on the defendants' real property in the amount of $52,918.75, together with legal interest and statutory counsel fees for "[t]he value of services so rendered and performed . . . ."

The plaintiff filed an action seeking in part to foreclose the mechanic's lien, and the defendants filed an

---

[2] Pursuant to the maintenance agreement, the plaintiff agreed to perform the following services: remove leaves and other miscellaneous debris from the property; uncover, clean and scrub the swimming pool; clean and scrub the fountain; mow, fertilize, aerate and dethatch the lawn; remove grass clippings; plant and maintain annual flowers and vegetables; prune shrubs; remove weeds from flower beds, mulched areas and gardens; edge shrub beds and walks; water lawn, flowers and vegetables; and clean gutters and drains. Additionally, the agreement provided that "[a]ll necessary equipment, fuel and repairs on all equipment will be provided by [the plaintiff] . . . . Any and all types of landscape materials needed on the [defendant's] estate will be supplied by the [defendant]. Some of the materials that may be needed are listed as follows: fertilizers, plant food, grass seeds, topsoil, mulch, wood chips, sod, plants, perennials, flowers and vegetable garden plants."

application to discharge the mechanic's lien pursuant to General Statutes § 49-35a. In support of their application, the defendants claimed that the services performed by the plaintiff were not lienable under § 49-33 because they were not "rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land . . . ." General Statutes § 49-33 (a). The trial court denied the defendants' application and this appeal followed.

The sole issue on appeal is whether the trial court improperly denied the defendants' application to discharge the mechanic's lien filed on its real property by the plaintiff. Specifically, the defendants contend that the services performed by the plaintiff, pursuant to the maintenance agreement, were not lienable under § 49-33. We agree with the defendants and, therefore, reverse the trial court's denial of the application to discharge.[3]

"The interpretation of the language of § 49-33 is an issue of law." *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, 241 Conn. 370, 375, 696 A.2d 326 (1997). Questions of law are subject to de novo review. *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. Under our rules of statutory construction, we are guided by the words of the statute itself, the legislative history and circumstances surrounding its enactment, the legislative policy the statute was designed to implement, and its relationship to existing legislation and common-law principles governing the same subject matter." (Internal quotation marks omitted.) *New England Savings Bank* v. *Meadow Lakes Realty Co.*, 243 Conn. 601, 611, 706 A.2d 465 (1998).

---

[3] We limit our analysis to the specific facts of this case. We express no opinion concerning the lienability of landscaping and other related services performed under different factual circumstances.

"The guidelines for interpreting mechanic's lien legislation are well established. Although the mechanic's lien statute creates a statutory right in derogation of the common law; *Camputaro* v. *Stuart Hardwood Corporation*, 180 Conn. 545, 550, 429 A.2d 796 (1980); *Gruss* v. *Miskinis*, 130 Conn. 367, 370, 34 A.2d 600 (1943); its provisions should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials. *H & S Torrington Associates* v. *Lutz Engineering Co.*, 185 Conn. 549, 553, 441 A.2d 171 (1981); *Henry F. Raab Connecticut, Inc.* v. *J. W. Fisher Co.*, 183 Conn. 108, 115, 438 A.2d 834 (1981). Our interpretation, however, may not depart from reasonable compliance with the specific terms of the statute under the guise of a liberal construction. *Camputaro* v. *Stuart Hardwood Corporation*, supra, 551; *Stone* v. *Rosenfield*, 141 Conn. 188, 191, 104 A.2d 545 (1954)." *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, 217 Conn. 361, 364–65, 585 A.2d 1210 (1991). Additionally, "we refuse to adopt an interpretation of § 49-33 (a) that could lead to such a fundamental change in our mechanic's lien statute absent clear evidence that the legislature intended such a far reaching result." Id., 371.

Pursuant to General Statutes § 49-33 (a), the persons entitled to file a mechanic's lien are those who have furnished "materials" or rendered "services" in connection with "the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land . . . ." General Statutes § 49-33 (a). In analyzing whether the plaintiff satisfied the requirements of § 49-33 (a), it is first necessary to examine precedent that interpreted this section prior to its amendment by the legislature in 1974.

"Prior to the statute's amendment by the legislature in 1974, our [Supreme Court's] cases construing the

language of [§ 49-33] . . . required, as a condition of lienability, that the work done be incorporated in or utilized in the building (or the appurtenance) to be constructed, raised, removed or repaired. . . . Our [Supreme Court's] other cases . . . consistently . . . insisted that mechanic's lien work be wrought into the liened property in some fashion. Thus the installation of fixtures that do not become part of the realty . . . or of electrical work that is not permanently attached to the realty . . . the removal of pipe from one building that is not incorporated into the building that is its replacement . . . and the furnishing of materials or equipment that is not shown to have gone into the construction or repair of a building . . . [were] all unlienable." (Citations omitted; internal quotation marks omitted.) *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, supra, 241 Conn. 376–77.

The plaintiff does not claim and the maintenance agreement does not establish that the services rendered by the plaintiff were incorporated or utilized in any building or the appurtenance to be constructed, raised, removed or repaired or wrought into the liened property in some fashion. See id., 376.

"In 1974, the legislature extended the reach of a mechanic's lien, under § 49-33, to encompass claims for materials furnished or services rendered 'in the improvement of any lot or in the site development or subdivision of any plot of land . . . .' Public Acts 1974, No. 74-310, § 1." Id., 377–78. The plaintiff claims that its "extensive landscaping and maintenance services fall within the statutory construct of an 'improvement [of] any lot.' " Our Supreme Court's decision in *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, supra, 217 Conn. 361, establishes, however, that the plaintiff did not render services "in the improvement of any lot" within the ambit of § 49-33 (a).

In *Nickel Mine Brook Associates*, the defendant claimed "that within the context of § 49-33, 'improvement' means anything that increases the value of the land." Id., 370. In rejecting the defendant's interpretation, our Supreme Court held that "neither the language of the 1974 amendment nor its legislative history indicates that the legislature intended to create such an open-ended test for which services are lienable under § 49-33 (a)." Id. Instead, the Supreme Court held "that the phrase 'improvement of any lot' was intended to include the same types of services embraced by the phrase 'site development or subdivision of any plot of land.' The *only* distinction intended by the legislature was between services benefiting particular lots and those benefiting the subdivision as a whole." (Emphasis added.) Id., 367.[4]

The decision in *Nickel Mine Brook Associates* establishes that the category of services that falls within the meaning of "improvement of any lot" includes only those services rendered for the purpose of subdividing or site developing a plot of land. In the present case, the plaintiff neither claims, nor does the maintenance agreement evidence, that the plaintiff rendered any services for the site development or subdivision of the

---

[4] Our Supreme Court's interpretation of the phrase "improvement of any lot" was predicated on a careful analysis of the legislative history to Public Acts 1974, No. 74-310. The Supreme Court stated: "The original version of Senate Bill No. 275, which became Public Acts 1974, No. 74-310, extended the scope of § 49-33 (a) only to services rendered 'in the site development or subdivision of any plot of land.' The language referring to 'the improvement of any lot' was adopted as House Amendment A. Conn. House Journal, May 1, 1974, pp. 1086–87; 17 H.R. Proc., Pt. 10, 1974 Sess., pp. 4970–73. The legislative history indicates that the purpose of this amendment to Senate Bill No. 275 was not to create a distinct category of services for which one could file a mechanic's lien, but rather to avoid potential problems for title searchers by restricting the ability of one who provides services for only a single lot to file a mechanic's lien against an entire subdivision. 17 H.R. Proc., Pt. 10, 1974 Sess., pp. 4970–71." *Nickel Mine Book Associates* v. *Joseph E. Sakal, P.C.*, supra, 217 Conn. 366–67.

defendant's real property. We conclude, therefore, that the services provided by the plaintiff did not constitute services rendered for the "improvement of any lot" within the ambit of § 49-33 (a).

Our analysis, however, does not end here. The trial court concluded that our Supreme Court's recent decision in *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, supra, 241 Conn. 370, establishes that the plaintiff's services were lienable under § 49-33. Specifically, the trial court stated that "[t]he *Thompson* decision appears to have cast the inclusion-exclusion boundary, as to what is lienable, into terms somewhat dependent on the existence of manual labor. . . . [T]he court has apparently found comfort with the idea that there may exist a 'physical enhancement' test . . . ." After applying the physical enhancement test to the facts, the trial court determined that the plaintiff's services were lienable. We conclude that it is unnecessary for us to apply this test in the present case.

In *Thompson & Peck, Inc.*, the plaintiff provided workers' compensation insurance and general employment liability insurance to a subcontractor who installed drywall at Century Tower, an office building in New Haven. Id., 373. Claiming that it was owed insurance premiums by the subcontractor, the plaintiff filed a mechanic's lien against Century Tower. Id. The plaintiff claimed that the unpaid insurance premiums owed by the subcontractor were lienable under § 49-33 because insurance coverage constituted "materials" furnished or "services" rendered in the construction of a building. Id., 371, 375. In rejecting the plaintiff's claim, our Supreme Court held that § 49-33 does not "include *services* and *materials* that have not enhanced the property in some physical manner, laid the groundwork for the physical enhancement of the property or [whose work was not] an essential part in the scheme of physical improvement." (Emphasis added.) Id., 380. In *New*

*England Savings Bank* v. *Meadow Lakes Realty Co.*, supra, 243 Conn. 614–15, our Supreme Court referred to the foregoing language from its decision in *Thompson & Peck, Inc.*, as "the physical enhancement test."

In the present case, for the plaintiff to establish that its services were lienable, it must demonstrate that (1) it rendered "services" within the ambit of § 49-33 (a) and (2) these "services" were rendered "in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land . . . ." General Statutes § 49-33 (a). In *Thompson & Peck, Inc.*, our Supreme Court limited its analysis to the first requirement, deciding only whether insurance premiums constituted "materials" or "services" within the meaning of § 49-33 (a). See *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, supra, 241 Conn. 371, 373, 375. Having determined that the plaintiff did not render services or furnish materials within the ambit of § 49-33 (a), the *Thompson & Peck, Inc.*, court had no occasion to determine whether these services or materials were rendered "in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land . . . ." General Statutes § 49-33 (a).

In the present case, it is unnecessary for us to decide whether, pursuant to the physical enhancement test, the services rendered by the plaintiff fall within the ambit of § 49-33 (a) because we have already determined that the plaintiff's services were not "rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in site development or subdivision of any plot of land . . . ." General Statutes § 49-33 (a). The plaintiff's failure to satisfy the latter requirement establishes that its services were not lienable under

§ 49-33 and, therefore, it is unnecessary for us to apply the physical enhancement test.

We conclude that the services performed by the plaintiff, pursuant to the maintenance agreement, which was a status quo agreement, were not lienable under § 49-33.

The denial of the application to discharge the plaintiff's mechanic's lien is reversed and the case is remanded with direction to grant the defendants' application to discharge.

In this opinion the other judges concurred.