[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These four cases involve two complaints for foreclosure of mechanic's CT Page 5481 liens on real property located in Southbury, Connecticut. In one action, Morris Dibner asserts a mechanic's lien in the amount of $302,000 plus interest against his former wife, Sieglinde Dibner, his children Eric and Andrea Dibner, and Eric's wife, Lisa Dibner. The property sought to be foreclosed consists of two parcels of land, parcel one owned by Eric and Lisa Dibner and parcel two owned by Eric and Andrea Dibner. In another action, the Winthrop Group, Inc. asserts a lien in the amount of $60,000 plus interest on the Southbury property owned by Eric and Lisa Dibner. The other two lawsuits were initiated by the property owners to discharge the Morris Dibner and Winthrop Group, Inc. liens referenced above.
Morris and Sieglinde Dibner were intermarried on March 4, 1965, and divorced on December 3, 1979. During the course of their marriage they had four children, including the parties Eric and Andrea Dibner. The parties acquired the property at interest consisting of ten-plus acres in Southbury, Connecticut located on Route 67. Two houses were located on the property. At the time of the dissolution of the marriage, the property was owned by Sieglinde Dibner. The divorce decree provided that the small house to the rear of the property was to be conveyed to the four Dibner children, subject to a life use by their father, Morris Dibner.
Morris Dibner's life use of the property continued until he executed a quit claim deed in October of 1991. Morris Dibner executed the deed to accommodate his former wife, Sieglinde, who had run into financial difficulties with the operation of her dress business located in Southbury, Connecticut. In order to refinance the mortgage on the property, it was necessary to subordinate or remove the life estate. A subordination agreement was originally proposed and forwarded by the bank's attorney; but Morris Dibner did execute a proper statutory quit claim deed[1] conveying his life estate in the property to Sieglinde Dibner.
Sieglinde Dibner's financial difficulties continued, and in 1996 she again requested the assistance of her former husband, Morris Dibner. Sieglinde authorized Morris to represent her in a claim by the Internal Revenue Service, resulting in a substantial reduction of her tax obligations. Morris Dibner also was substantially involved in the favorable negotiation of a mortgage debt.
At this time, the family also discussed the possibility of developing the property as a means of clearing up the financial encumbrances on the property. Through the efforts of Morris and Andrea Dibner, the property was subdivided in 1997 into two lots of six and four acre parcels, each including a house. Parcel one was conveyed from Sieglinde Dibner to Andrea and Eric Dibner on April 16, 1997. Parcel one was subsequently CT Page 5482 conveyed by Sieglinde Dibner, Eric Dibner and Andrea Dibner to Eric and Lisa Dibner on July 26, 1999. Parcel two was conveyed by Sieglinde Dibner to Eric, Andrea and Sieglinde Dibner on June 30, 1997, and ultimately to Eric and Andrea Dibner.
The mechanic's lien claims by Morris Dibner allege services rendered from June 6, 1996 until May 8, 2000, the date of the lien related to the development of the Cedar Tree Condominium project consisting of some 26 condominium units. The Winthrop Group lien similarly relates to services rendered in the proposed design, construction and erection of buildings known as Cedar Tree Condominiums between the period September 14, 1998 to September 12, 2000.
The parties substantially dispute their agreements and understandings with respect to the property development. Morris Dibner testified that Sieglinde Dibner, Eric Dibner, Andrea Dibner and Lisa Dibner all agreed to his services in furthering the condominium development project. The Winthrop Group through its principal, Elisha Gallup, was retained by Morris Dibner and had no direct agreements with any of the property owners.
Sieglinde, Eric, Lisa and Andrea Dibner all testified at the trial in contradiction to Morris Dibner. They acknowledged their interest in considering some further subdivision of the property which would allow the sale of lots for single family homes. Eric and Andrea Dibner testified convincingly that the property had been their family home and they were never amenable to its development into a condominium project. Eric Dibner essentially lived at the property all his life, and now with his wife enjoyed the relative isolation of the large lot. Andrea Dibner, who lives in New York City, uses the home as a weekend retreat and, similarly, was uninterested in the condominium project. Their testimony was that they would listen to their father's discussions of his condominium project plan because "he wouldn't take `no' for an answer." They described several heated family discussions where they emphatically refused to accede to his request to develop the property as he desired.
James Sammis, a financial planner intimate with the family's financial arrangements, confirmed the testimony of Sieglinde, Eric and Andrea Dibner, that there was never an agreement with respect to the development of the property as a condominium project.
The mechanic's lien statute § 49-33 (a) provides for a lien for improvements on land when "the claim is by virtue of an agreement with or by consent of the owner . . . or of some person having authority from or rightfully acting for the owner. . . ." Connecticut authority defines "consent" for purposes of § 49-33 (a) as more than the mere granting CT Page 5483 of permission for work to be conducted on one's property. See Hall v.Peacock Fixture Electric Co., 193 Conn. 290, 293-95, 475 A.2d 1100
(1984), and St. Catherine's Church Corporation v. Technical PlanningAssociates, Inc., 9 Conn. App. 682, 684, 520 A.2d 1298 (1987). The "consent" intended by the statute must be a consent demonstrating that the owner of the land agreed to be liable for the materials or labor.Peck v. Brush, 90 Conn. 651, 653, 98 A. 561 (1916); Avery v. Smith,96 Conn. 223, 227, 113 A. 313 (1921). In the leading case, Hall v.Peacock Fixture Electric Co., supra, the court notes at 193 Conn. 295: "The mere granting of permission for work to be conducted on one's property has never been deemed sufficient to support a mechanic's lien against the property."
There is absolutely no evidence, even in the testimony of Morris Dibner, that there was ever an agreement by the property owners to compensate him for his services. The mechanic's lien by the Winthrop Group, Inc. was filed against the property of Eric and Lisa Dibner and not on the second parcel. The most that Mr. Gallup could establish was that the property owners were aware of some of the work that he was performing on his property, and they never prevented him from doing site work on the property. The testimony does not go as far as establishing that he ever had direct permission for the work, and there is no evidence of any agreement whatsoever between the property owners and the Winthrop Group, Inc. The Winthrop Group did have authorization from Morris Dibner, but Mr. Dibner was not the agent of the property owners with respect to any specific development of the property.
The lien filed by Morris Dibner also is deficient with respect to the services claimed. His real estate development services that allegedly included the subdivision of the property are not lienable services contemplated by the mechanic's lien statute. See Nickel Mine BrookAssociates v. Joseph E. Sakal, P.C., 217 Conn. 361, 370, 585 A.2d 1210
(1991). The lien also includes the benefit of a mortgage negotiation, which would not be lienable. Id.
Connecticut General Statutes § 49-34 states that for a mechanic's lien to be valid it must be filed within ninety (90) days of the performance of services for which the lien is claimed. The Morris Dibner lien was filed in August of 2000 and the Winthrop Group, Inc. lien was filed in December of 2000. The court finds that no work whatsoever was performed in connection with the project in 2000 and, thus, the liens are untimely.
The lienors were not authorized by the property owners to perform services for which the property owners or the property would be financially liable. The Morris Dibner lien includes services which were CT Page 5484 not subject to a mechanic's lien. Both liens are untimely.
 CONCLUSION
In the files bearing docket numbers X06 CV 01 0164317S and X06 CV 01 0164318S, judgment enters for the plaintiffs and the mechanic's liens are discharged.
In the files bearing docket numbers X06 CV 01 0164994S and X06 CV 01 0166261S, judgment enters for the defendants.
ROBERT F. McWEENY, J.