# HARVEY WEBER *v.* PASCARELLA
# MASON STREET, LLC
## (AC 27794)

Schaller, Harper and Peters, Js.

Argued May 24—officially released September 11, 2007

*Daniel W. Moger, Jr.*, for the appellant (defendant).

*Brenden P. Leydon*, for the appellee (plaintiff).

### Opinion

HARPER, J. The defendant, Pascarella Mason Street, LLC, appeals from the judgment of the trial court denying its application to discharge or reduce a mechanic's lien placed on its property by the plaintiff, Harvey Weber. The defendant claims that the court improperly concluded that (1) all of the services for which the plaintiff filed the lien were lienable and (2) the amount of the lien was not excessive.[1] We affirm the judgment of the trial court.

It is undisputed that, at the time of the events underlying this appeal, the plaintiff was in the business of providing architectural services to clients under the business name of Weber & Associates. The defendant owned a building in Greenwich and rented office and residential space in the building to tenants. The court found that, on or about May 7, 2004, the parties entered into an oral contract for the plaintiff to render his services, concerning improvements to the Greenwich building, to the defendant for a fee. On June 22, 2004, the parties executed a written contract for the performance of such services. From May 7 to approximately August 27, 2004, the plaintiff performed various services

---

[1] The defendant also claimed that the court improperly concluded that the lien satisfied the "subscribed and sworn to" provision of General Statutes § 49-34 (1) (C). The defendant withdrew this claim during oral argument before this court.

for the defendant. These services included, but were not limited to, the preparation of varied floor plans, demolition plans, drawings of rentable spaces for prospective tenants in the building and computer simulated models of the building. The defendant used the plaintiff's work product for such purposes as obtaining permits and marketing its building to prospective tenants.

Periodically, the plaintiff submitted invoices to the defendant for his services. The defendant made payment for only some of these charges, leaving an outstanding balance of $11,810.50. On October 13, 2004, the plaintiff caused a certificate of mechanic's lien against the Greenwich building to be filed on the municipal land records of Greenwich, claiming the sum of $11,810.50, plus interest, due from the defendant.

In April, 2005, the plaintiff brought an action in connection with the debt, seeking, among other relief, a strict foreclosure of the lien. In June, 2005, the defendant filed a reply (denying the existence of the alleged debt), various special defenses (in part challenging the validity of the lien, the existence of any debt and the lienability of the plaintiff's services) and a counterclaim in which it alleged, inter alia, that the plaintiff's "dismal performance" under the contract caused it damages. The plaintiff later denied each adverse allegation set forth in the defendant's responsive pleadings and counterclaim. In August, 2005, the defendant, in accordance with General Statutes § 49-35a, filed an application to discharge or reduce the lien. Generally, the defendant alleged that "there is not probable cause to sustain the validity of such lien."

On August 8, 2005, the court, *Black, J.,* held an evidentiary hearing on the defendant's application. On December 30, 2005, the defendant, in accordance with Practice Book § 11-19 (b), filed a motion to reassign the matter to another judicial authority. The court, *Rogers, J.,* granted

the motion for reassignment, and the court, *Jennings, J.*, thereafter considered the matter on the basis of the transcript of the proceeding held on August 8, 2005, the evidence presented at the August 8, 2005 hearing and the memoranda of law submitted by the parties.[2] On

---

[2] The defendant suggests that, by deciding its motion on the basis of the transcript of the proceeding held on August 8, 2005, as well as the evidence presented at that hearing, the court improperly resolved contested factual issues on the basis of a "cold record" rather than on the basis of its own observation of testifying witnesses. Relying on *Gorelick* v. *Montanaro*, 94 Conn. App. 14, 20 n.14, 891 A.2d 41 (2006), the defendant claims that the court's conduct in this regard was "fundamentally unfair" and urges us to disregard the court's factual determinations.

As a preliminary matter, to the extent that the defendant has raised this as an issue in the appeal, the record is not adequate to afford it review. The defendant represents that, at trial, both parties stipulated that "a reassigned judge could decide the application on the transcript." The defendant further represents that, before Judge Jennings rendered his decision, it cautioned the court "about making any decision turning on the credibility of witnesses." Judge Jennings, in a footnote in his memorandum of decision, noted that, on February 17, 2006, and "in open court on June 15, 2006," the parties stipulated that the matter could be "reassigned to the undersigned to be taken on the papers." (Internal quotation marks omitted.) The court thereafter dismissed any objection by the defendant to its having resolved the matter in accordance with the parties' stipulation. Certainly, in reviewing this issue, it would be incumbent on this court to examine the language of any stipulation made by the parties or matters related thereto. The defendant, however, has not provided this court with any transcript of proceedings in which such a stipulation was made or any other record of a stipulation. The only transcript filed by the defendant was that of proceedings on August 8, 2005. Thus, the defendant has failed in its responsibility to provide this court with a record adequate for review. See *DeMatteo* v. *New Haven*, 90 Conn. App. 305, 311–12, 876 A.2d 1246, cert. denied, 275 Conn. 931, 883 A.2d 1242 (2005).

More importantly, the defendant has not raised or identified this claim in accordance with Practice Book § 67-4 (a), in that it is not listed among the principal issues raised in the appeal. Additionally, the claim is not briefed in accordance with Practice Book § 67-4 (d) in that a proper analysis of the claim does not appear under an appropriate and distinct heading within the defendant's brief. Instead, the defendant discusses this issue in a section of its brief entitled "NATURE OF PROCEEDINGS AND FACTS OF CASE." The rules of appellate procedure are not abstract or technical goals; compliance with these rules is essential to the fair resolution of issues raised on appeal. A briefing strategy like that employed by the defendant is fundamentally unfair to the plaintiff and to this court. For these reasons, we decline to treat this issue as a properly asserted claim on appeal and decline to

June 15, 2006, the court issued a memorandum of decision denying the defendant's application to discharge or reduce the lien. The defendant, in accordance with General Statutes § 49-35c, thereafter filed the present appeal.

I

At trial, the defendant claimed that many of the services provided by the plaintiff were not lienable because they were marketing tools and played no role, either actual or otherwise, in the physical improvement of its property. The court concluded that the services provided by the plaintiff "were part of the improvement or site development of the defendant's property," that "the plaintiff's services laid the groundwork for physical enhancement [of the defendant's property]" or that the services "played an essential part in the scheme of physical improvement of the defendant's property . . . ." The court concluded that the plaintiff was entitled to relief under our mechanic's lien statute, General Statutes § 49-33, and declined to grant the application to discharge or to reduce the lien on this ground. The defendant challenges the court's conclusion on appeal. The defendant's challenge is without merit.

The defendant does not challenge the court's factual findings concerning the services that the plaintiff provided or the extent to which the defendant utilized

afford it review. See *Grimm* v. *Grimm*, 276 Conn. 377, 391 n.14, 886 A.2d 391 (2005) (court declines to review issue that "is buried in the statement of facts and is not a distinctly raised separate point on appeal"), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006); *Northeast Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 50–51, 861 A.2d 473 (2004) (noncompliance with Practice Book § 67-4 deemed basis on which to deny appellate review of claim); *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 300 n.9, 852 A.2d 703 (2004) (same); *Ramsay* v. *Camrac, Inc.*, 96 Conn. App. 190, 198 n.8, 899 A.2d 727 (court declines to review claim "buried" in discussion of related issue and not "distinctly raised as a separate point on appeal"), cert. denied, 280 Conn. 910, 908 A.2d 538 (2006).

these services. The court found that, pursuant to an agreement between the parties, the plaintiff provided design services and prepared "as built floor plans, preliminary new floor layout plans, detailed demolition plans and a reflected ceiling plan." (Internal quotation marks omitted.) The court further found that the plaintiff had prepared "drawings of individual rentable spaces for prospective tenants and . . . for marketing purposes, a three dimensional, computerized video model of what the completed building would look like to a person driving past the building . . . ." Additionally, the court stated: "The plans and drawings and the computer model prepared by the plaintiff were utilized by the defendant in the application for building permit submitted to the town of Greenwich for demolition of parts of the building or for purposes of marketing the property."

The issue is whether the legislature intended to extend benefits under our mechanic's lien statute to an architect who provided these types of services to a property owner. "The interpretation of the language of § 49-33 is an issue of law. . . . Questions of law are subject to de novo review." (Citation omitted; internal quotation marks omitted.) *Ceci Bros., Inc.* v. *Five Twenty-One Corp.*, 51 Conn. App. 773, 776, 724 A.2d 541 (1999).

General Statutes § 49-33 (a) provides: "If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision or any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or subdivided, or of some person having

authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim."

This statute has been the subject of considerable interpretation by our Supreme Court. Its interpretation of the statute guides our analysis. In *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, 217 Conn. 361, 585 A.2d 1210 (1991), our Supreme Court held that an attorney who provided assistance in zoning and other matters related to real estate was not entitled to file a mechanic's lien. The court discussed the effect of a 1974 amendment to § 49-33 (a); see Public Acts 1974, No., 74-310; which expanded the scope of the statute to services rendered "in the improvement of any lot [or] in the site development or subdivision of any plot of land." *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, supra, 366. The court noted that this amendment, in part, eliminated the requirement that lienable services "be incorporated or utilized in a building or appurtenance"; id., 365; and manifested a legislative intent to expand the scope of coverage of the mechanic's lien statute. Id., 365–66.

The court in *Nickel Mine Brook Associates* noted the "distinct difference" that existed between legal services and the types of services that previously had been held to fall within the scope of § 49-33 (a). Id., 368. Specifically, the court observed that a "mechanic" has been defined as "a skilled worker who brings about a result by the use of tools, machines or equipment." Id. The court noted that such activities as road construction, grading of a building site, installation of permanent fixtures, preparation of architectural plans actually

used in the construction of a building and the construction of a well had been held to be lienable services. Id.

The court in *Nickel Mine Brook Associates* also noted that references in the statute's legislative history "to surveyors and engineers who draft subdivision plans provide some evidence of the types of services that might be embraced" by the statute. Id., 369. The court noted that "[i]nterpreting the 1974 amendment as having expanded the scope of § 49-33 (a) to include legal services could lead to the filing of mechanic's liens by a wide range of parties who provide services to land developers, such as insurance agents, real estate agents who are instrumental in the purchase of land and advise as to its potential uses, and financial advisers such as bankers and accountants." Id., 371. The court, mindful of its obligation to interpret the statute broadly in light of its remedial purpose, nevertheless concluded that "we refuse to adopt an interpretation of § 49-33 (a) that could lead to such a fundamental change in our mechanic's lien statute absent clear evidence that the legislature intended such a far reaching result." Id.

Later, in *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, 241 Conn. 370, 374, 696 A.2d 326 (1997), our Supreme Court held that "the legislature did not intend to extend the benefits of the mechanic's lien statute to an insurance agent attempting to collect unpaid premiums from an insured subcontractor." The court resolved the issue of whether, or to what degree, services must be associated with physical enhancement of property. The court, adopting the so-called physical enhancement test, held that "the legislature did not intend to include within § 49-33 those persons or businesses whose services have not enhanced the property in some physical manner, laid the groundwork for the physical enhancement of the property, or whose work was not an essential part in the scheme of physical improvement." Id., 374. The court thus concluded that,

"like legal services, § 49-33 does not extend to services not directly associated with the physical construction or improvement of the land." Id., 379.

In *New England Savings Bank* v. *Meadow Lakes Realty Co.*, 243 Conn. 601, 614, 706 A.2d 465 (1998), however, our Supreme Court held that surveying and engineering services concerning site development and the subdivision of a plot of land were lienable. The lienor "prepared the site testing, layout and road designs, and presented those plans to the town for preliminary project approval." Id. The court reiterated its holding in *Thompson & Peck, Inc.*, that "§ 49-33 does not extend to services not *directly associated with the physical construction or improvement of the land.*" (Emphasis in original.) Id. The court then reasoned that the surveying and engineering work at issue was sufficiently associated with the physical construction or improvement of the land, noting that the services provided were integral to receiving town approval of the project. Id. Further, the court stated that the services "laid the groundwork for the physical enhancement of the subdivision, which became an essential part of the scheme of physical improvement of the subdivision project." Id., 615.

We conclude that the architectural services provided by the plaintiff in the present case satisfy the physical enhancement test, thus evidencing a direct association with the physical construction or improvement of the defendant's real property. The physical nature of architectural services, including those at issue, is undeniable: "The plans and specifications practically construct the building up to the point where it can be apprehended by others. Without them or their equivalent the building could not be constructed at all: the contractor would have no basis for his bid, the materialmen would not know what materials to furnish, and the workmen

would not know what manual labor to perform." *Marchetti* v. *Sleeper*, 100 Conn. 339, 342, 123 A. 845 (1924). Similar to the surveying and engineering services at issue in *New England Savings Bank*, the services at issue laid the groundwork for the physical enhancement to real property. The plaintiff's plans and drawings were, in fact, used by the defendant to secure necessary permits from the town to enable such improvement efforts to occur lawfully. The services at issue, which played an essential role in the scheme of physical improvement of the defendant's real property, are thus readily distinguishable from the legal services at issue in *Nickel Mine Brook Associates* and the insurance services at issue in *Thompson & Peck, Inc.* For these reasons, and mindful of our obligation to construe the mechanic's lien statute liberally in light of its remedial purpose,[3] we agree with the trial court's legal conclusion that the services at issue were lienable.[4]

## II

The defendant next asserts that the court improperly rejected its claim that the plaintiff improperly calculated a credit provision of the parties' agreement under which certain services were to be provided without charge by the plaintiff and, thus, that the amount of the lien was excessive. We disagree.

The court found that, on May 7, 2004, the defendant orally accepted a written proposal prepared by the plaintiff and dated April 23, 2004. The court found that the defendant later signed a written agreement that was dated June 22, 2004. This written agreement, prepared

[3] See, e.g., *F. B. Mattson Co.* v. *Tarte*, 247 Conn. 234, 238, 719 A.2d 1158 (1998), and cases cited therein.

[4] The defendant also claims that, if some of the services for which the lien was filed are not lienable, the court should have made a "proper allocation" for such services. We conclude that the court properly determined that all of the services at issue were lienable and, thus, need not address this aspect of the defendant's claim.

by the plaintiff, provided in relevant part: "I will provide a credit on your first monthly bill with [twenty] hours of my staff time (including mine) at no cost to you."

The court further found that "[t]he plaintiff allowed a credit or discount in the amount of $2505 on the first monthly invoice submitted to the defendant for twenty hours of services performed [which were] calculated based on the agreed hourly rates of himself and his staff." (Citation omitted.) The court noted the plaintiff's testimony at trial that "about thirteen or fourteen hours of the twenty hour credit were performed in May, 2004, prior to the [signing] of the written agreement on June 22, 2004." The court expressly relied on the plaintiff's testimony that he began working for the defendant on or about May 7, 2004, after the defendant orally accepted the plaintiff's written proposal.

The defendant argued that by including work performed prior to the June 22, 2004 agreement in his calculation of the twenty hour credit on the first monthly invoice, the plaintiff had impermissibly "converted his activities prospecting for work into work done pursuant to the agreement [of June 22, 2004]." The court refuted this argument, finding as follows: "[T]he hours put in [by the plaintiff] prior to June 22, 2004, were expended in preparing preliminary drawings and . . . were all hours put in by [the plaintiff] or his staff in carrying out their obligations under the contract, which had been spelled out prior to June 22, 2004, in the written proposal and cover letter the plaintiff had sent to the defendant on or about April 23, 2004 . . . which was accepted verbally on May 7. . . . There is no requirement in the written contract that the services had to be performed after the contract was signed. Even disregarding the court's finding that those services were performed pursuant to an oral agreement, it was the plaintiff's prerogative to start working under the contract prior to the actual signing, especially since the

[wife of one of the defendant's agents] and [a] representative [of the defendant] had started sending design ideas to the plaintiff for his review and consideration prior to the signing of the written contract." (Citations omitted.)

The gist of the defendant's claim is that the court improperly considered the plaintiff's testimony that he was working for the defendant prior to June 22, 2004, and that the hours so spent were properly included in the twenty hour credit noted in the written contract of June 22, 2004.[5] The defendant claimed before the trial court that testimony from the plaintiff in this regard was inadmissible because it ran afoul of the parol evidence rule. In its brief, the defendant claims that "[the plaintiff's] understanding and the court's finding of an oral contract dated May 7, 2004, both run afoul of the parol evidence rule." (Internal quotation marks omitted.)

The court rejected the parol evidence claim. It reasoned that it had not used the plaintiff's testimony to vary or to contradict the terms of the parties' written agreement but had considered and found contractually acceptable the method by which the plaintiff calculated the credit provision of that agreement. In this regard, the court noted that the agreement was silent as to

---

[5] The defendant also argues, in part, that the court's findings are improper because "[t]he evidence showed [that] the operative contract was a written agreement dated June 22, 2004. . . . It followed a proposal submitted by [the plaintiff] dated April 23, 2004 . . . which was not accepted . . . ." (Citations omitted.) The defendant does not challenge the court's factual findings, or justify this factual argument, in any greater specificity. To the extent that the defendant attempts to challenge the accuracy of the court's factual findings, we reject such challenge because the court's findings are supported by the evidence in the record. See, e.g., *McCullough* v. *Waterside Associates*, 102 Conn. App. 23, 27–28, 925 A.2d 352 (2007) ("where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence, or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous" [internal quotation marks omitted]).

whether the services the plaintiff was to include in the credit were to be performed by the plaintiff exclusively before or after the signing of the agreement.

"Ordinarily, [o]n appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. . . . Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion. . . . Because the parol evidence rule is not an exclusionary rule of evidence, however, but a rule of substantive contract law . . . the [defendant's] claim involves a question of law to which we afford plenary review. . . .

"The parol evidence rule is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. . . .

"The parol evidence rule does not of itself, therefore, forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement

which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud. . . . These recognized exceptions are, of course, only examples of situations where the evidence (1) does not vary or contradict the contract's terms, or (2) may be considered because the contract has been shown not to be integrated; or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud." (Citation omitted; internal quotation marks omitted.) *Alston Power, Inc.* v. *Balcke-Durr, Inc.*, 269 Conn. 599, 609–10, 849 A.2d 804 (2004).

The provision at issue states that the plaintiff would provide to the defendant a credit in its first monthly bill for twenty hours of work performed, either by the plaintiff personally or by his staff. The provision is unambiguous in terms of the number of hours to which it applied, when the plaintiff was to apply the credit and the types of services to which it applied. Yet, it cannot be disputed that the provision, or the written agreement as a whole, is ambiguous in that it did not provide guidance as to how the credit should be calculated where, as here, the plaintiff performed services for the defendant prior to and after the signing of the written agreement. No other provision of the agreement sheds light on the issue; thus, the agreement is "unclear as to its proper application in the circumstances presented." *Landry* v. *Spitz*, 102 Conn. App. 34, 58, 925 A.2d 334 (2007).

The court properly considered extrinsic evidence, including the plaintiff's testimony concerning his understanding of the provision and his calculation of the credit, to aid in its interpretation of this provision.[6] On

[6] The contract does not contain an integration clause.

the basis of that evidence, the court determined that the plaintiff properly included services that he had provided prior to June 22, 2004, in the credit that he applied to the first monthly bill. The court did not utilize this evidence to vary or contradict any of the provisions of the parties' agreement but merely to interpret how those explicit provisions should be applied under the circumstances presented. Accordingly, we conclude that the court's consideration of this evidence did not run afoul of the parol evidence rule.

The judgment is affirmed.

In this opinion the other judges concurred.