DREAMBUILDERS CONSTRUCTION, INC. *v.*
EMALIE DIAMOND
(AC 30796)

Bishop, Beach and Schaller, Js.

Argued February 2—officially released June 8, 2010

*Noah J. Schafler*, for the appellant (defendant).

*Michael S. Bonnano*, with whom, on the brief, was *Paul M. Geraghty*, for the appellee (plaintiff).

SCHALLER, J. The defendant, Emalie Diamond, appeals from the judgment of strict foreclosure rendered in favor of the plaintiff, Dreambuilders Construction, Inc.[1] On appeal, the defendant claims that the trial court's (1) order of a strict foreclosure instead of a foreclosure by sale was improper, (2) finding that there was a contract between her and the plaintiff was clearly erroneous, (3) finding of the value of the services and material furnished to support the mechanic's lien was clearly erroneous, (4) finding that she could not avail herself of the protection of the Home Improvement Act (act); General Statutes § 20-418 et seq.; because she invoked it in bad faith was clearly erroneous and (5) finding that a general release she executed in favor of the plaintiff, which included a release of her counterclaim, also was a release of her defenses was improper. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history that are relevant to our resolution of the defendant's appeal. The defendant owns the property located at 96 Coventry Way in Guilford. The house on the property suffered extensive water damage after a pipe broke during the winter of 2004 and into 2005. According to the water company's meter reading, approximately 183,000 gallons of water had spilled into the house over the course of the winter. The defendant hired the plaintiff to remediate the damage and to remodel the entire house. The plaintiff drafted a contract for the necessary work[2] totaling $110,000. The plaintiff never received a

---

[1] Judgment was entered in favor of Dreambuilders Construction, Inc., doing business as Bouchey Enterprises, LLC, the name in which the action was brought.

[2] Specifically, the description of the work in the contract states the following: "First floor remove all damaged and moldy [S]heetrock and wallpaper and replace and tape, paint and trim to finish. Install new interior doors where needed. Remove and replace all flooring where needed with [t]ile and oak to match existing. Replace [k]itchen [cabinets] with new to match existing. All rooms listed on first floor will be completely finished and

signed copy of the contract from the defendant but was constantly reassured by her that she had signed the contract and would deliver it at their next meeting. At each meeting, the defendant failed to provide the plaintiff with the signed contract, despite numerous reminders from the plaintiff. Regardless, the defendant continued to pay the plaintiff pursuant to the payment schedule and expressed, on numerous occasions, her satisfaction with the plaintiff's work. During the course of the work, the parties agreed to an adjustment of the contract price to $111,000.[3] The defendant paid the plaintiff $75,000 and refused to pay any further sums under the contract, even though the plaintiff had completed all the necessary work.

On August 2, 2006, the plaintiff commenced an action to foreclose its mechanic's lien in the amount of $36,000, as a result of the unpaid moneys due for the work and services performed on the property. On September 9, 2008, trial was held, and the defendant personally did not appear but was represented by counsel. On February 3, 2009, the court issued its memorandum of decision. The court found that the plaintiff was owed $36,000 for labor and materials and rendered judgment of strict foreclosure. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court's order of a strict foreclosure instead of a foreclosure by sale was

---

returned to their new condition. From top of basement stairs down will be completely gutted. Basement will be completely finished with choice of carpet. This quote is to replace water damage and restore that damage back to its original condition. If upgrades or changes are to be made beyond the original materials or spaces this would increase price which will be worked out with owner at that time."

[3] Specifically, the defendant elected to upgrade the kitchen, which reduced the contract price by $7500 because the work was to be completed by an independent contractor, and the defendant requested that the plaintiff paint and fix the rotted trim on the outside of the house, which increased the contract price by $8500.

improper. The defendant argues that the court abused its discretion in ordering a strict foreclosure because the value of the property substantially exceeds the value of the lien being foreclosed. We are not persuaded.

In order to resolve the defendant's claim, we begin by setting forth the relevant legal principles and the standard of review. "A foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Savings Bank of Danbury* v. *Karam*, 119 Conn. App. 847, 850, 989 A.2d 664 (2010).

Any mechanic's lien may be foreclosed in the same manner as a mortgage. See General Statutes § 49-33 (i). "In all essential respects the attributes of foreclosure of mortgages apply to mechanics' liens. . . . In Connecticut, a mechanic's lien is a creature of statute and establishes a right of action where none existed at common law." (Citation omitted; internal quotation marks omitted.) *Anthony Julian Railroad Construction Co.* v. *Mary Ellen Drive Associates*, 50 Conn. App. 289, 296, 717 A.2d 294 (1998).

The defendant failed to file a motion requesting a foreclosure by sale rather than a strict foreclosure. General Statutes § 49-24 provides: "All liens and mortgages affecting real property may, on the written motion of any party to any suit relating thereto, be foreclosed by a decree of sale instead of a strict foreclosure at the discretion of the court before which the foreclosure proceedings are pending." See also *New Haven* v. *God's*

*Corner Church, Inc.*, 108 Conn. App. 134, 139, 948 A.2d 1035 (2008) ("At common law, the term foreclosure meant strict foreclosure. . . . [Section] 49-24 appends to that definition the remedy of foreclosure by sale without altering the existing common law definition." [Internal quotation marks omitted.]). In the absence of a motion requesting a foreclosure by sale, the court did not abuse its discretion in ordering a strict foreclosure. See *Ocwen Federal Bank, FSB* v. *Charles*, 95 Conn. App. 315, 323, 898 A.2d 197 ("[i]n Connecticut, strict foreclosure is the rule, foreclosure by sale the exception" [internal quotation marks omitted]), cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006).

II

The defendant's second claim is that the court's finding that a contract existed between the plaintiff and the defendant was clearly erroneous. Specifically, the defendant argues that no contract existed because the terms of the contract were not definite and certain. We disagree.

We begin by setting forth our standard of review. "Under well established contract law, a contract must be definite and certain as to its terms and requirements. . . . In addition, there must be a manifestation of mutual assent to those terms and requirements. . . . The defendant's challenges to the agreement's certainty and definiteness and the parties' mutual assent therefore raise questions of whether a valid contract ever existed. It is well settled that the existence of a contract is a question of fact, which we review for clear error. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh

the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *Bender* v. *Bender*, 292 Conn. 696, 728–29, 975 A.2d 636 (2009).

The defendant argues that the terms of the contract were not definite and certain because no documents were ever signed, nor was a price agreed upon. The plaintiff's president, Randall J. Bouchey, testified in detail as to the terms of the agreement and introduced an unsigned copy of the contract, which included a description of the work to be completed, the cost of the work and a payment schedule. Even though the plaintiff did not receive a signed copy of the contract from the defendant, the plaintiff received assurances from the defendant that she had signed the contract. Furthermore, the defendant paid the plaintiff pursuant to the payment schedule and praised the defendant, on numerous occasions, during the completion of the work. On the basis of this evidence, the court's finding that a contract existed was not clearly erroneous.

### III

The defendant next claims that the court's finding as to the value of the services and material furnished to support the mechanic's lien was clearly erroneous. Specifically, the defendant argues that the amount of the mechanic's lien was based on the contract price and not the value of the services and material furnished by the plaintiff. We disagree.

"In this state, a mechanic's lien is a creature of statute and gives a right of action which did not exist at common law. . . . The purpose of the mechanic's lien is

to give one who furnishes materials or services the security of the building and land for the payment of his claim by making such claim a lien thereon. . . . Moreover, [t]he guidelines for interpreting mechanic's lien legislation are . . . well established. Although the mechanic's lien statute creates a statutory right in derogation of the common law . . . its provisions should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials. . . . Our interpretation, however, may not depart from reasonable compliance with the specific terms of the statute under the guise of a liberal construction. . . .

"[General Statutes § 49-33 (a)] provides: If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim. . . . The statute is designed to furnish security for a contractor's labor and materials and, as this court has noted previously, is remedial in nature. . . . Prior precedent from this court concluded that the statute was not intended to provide a security interest for a builder's expectation of profit or other contract

measure of damages." (Citations omitted; internal quotation marks omitted.) *Intercity Development, LLC* v. *Andrade*, 286 Conn. 177, 183–85, 942 A.2d 1028 (2008).

The court clearly found that the amount of the mechanic's lien was for the value of the services rendered and material furnished and was not based on the builder's expectation of profit or other contractual measure of damages.[4] The court's factual finding regarding the value of the services and material furnished with respect to the mechanic's lien was supported by the evidence introduced at trial. Specifically, Bouchey testified about the value of the labor and materials provided, that profit was not claimed in the mechanic's lien and that the contract was underbid. On the basis of the evidence in the record, the court's finding as to the value of the services rendered and the materials furnished was not clearly erroneous.

IV

The defendant next claims that the court's finding that she could not avail herself of the protection of the act because she invoked it in bad faith was clearly erroneous. Specifically, the defendant argues that the plaintiff introduced no evidence of any kind to support a finding of bad faith in this case, and, in the alternative, if bad faith properly was found, it occurred after the formation of the contract. We conclude that the record is inadequate to review this claim.

---

[4] Specifically, the court stated: "[T]he defendant claims the lien is not for material and labor; rather, it seeks to provide for a security interest for the builder's contract measure of damages. Just because the amount claimed is equal to the contract price less the amount paid does not mean it is for 'profit.' The plaintiff testified extensively regarding the value of the services and the material rendered which supports the plaintiff's claim for *at least* the amount of $111,000. The plaintiff having been paid $75,000 results in a balance due for labor and materials in the amount of $36,000—the amount of the claimed lien." (Emphasis in original.)

"It is well established that the appellant bears the burden of providing an appellate court with an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . . Without an adequate record, [w]e . . . are left to surmise or speculate as to the existence of a factual predicate for the trial court's rulings. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us . . . would be entirely speculative." (Internal quotation marks omitted.) *DuBaldo Electric, LLC* v. *Montagno Construction, Inc.*, 119 Conn. App. 423, 433–34, 988 A.2d 351 (2010).

The court's February 3, 2009 memorandum of decision concerning the act simply states: "The defendant also claims that the contract violated the [act] because it failed to disclose certain terms. The invocation of the [act as a] defense by the defendant was made in bad faith and falls within the bad faith exception to the [act], which provides: 'The central element giving rise to this exception [to the act] is the recognition that to allow the homeowner who acted in bad faith to repudiate the contract and hide behind the act would be to allow him to benefit from his own wrong, and indeed encourage him to act thusly. Proof of bad faith therefore serves to preclude the homeowner from hiding behind the protection of the act.' *Habetz* v. *Condon*, 224 Conn. 231, 237, 618 A.2d 501 (1992)." Although the court found bad faith on the part of the defendant, its memorandum of decision does not reveal the factual basis for the finding. Because the defendant failed to seek an articulation related to this issue, we are bound to conclude that the record is inadequate for review.

## V

Finally, the defendant clams that the court's finding that the general release she executed, which resulted from a settlement between her and the plaintiff's insurer and which included a release of her counterclaim, also was a release of her defenses was improper. Specifically, the defendant argues that "to the extent the *court may have ruled* that the general release was a release of defenses, it did so incorrectly." (Emphasis added.) The defendant does no more than assert this vague claim, without explaining the factual basis for the claims of error and without providing any legal support. We therefore decline to address this issue.[5] See *Statewide Grievance Committee* v. *Rapoport,* 119 Conn. App. 269, 280, 987 A.2d 1075 (2010) ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]).

The judgment is affirmed and the case is remanded for the purpose of setting a new law day.

In this opinion the other judges concurred.

---

[5] We note that the defendant does not challenge the court's finding that the release applied to her counterclaim. The defendant raised only a single special defense—the alleged failure of the plaintiff to comply with the act—which the court did address in its memorandum of decision. See part IV of this opinion.