# PAMELA CIANCI *v.* ORIGINALWERKS, LLC
## (AC 30957)

Bishop, Lavine and Alvord, Js.

Submitted on briefs October 15, 2010—officially released January 11, 2011

*Edward Kanowitz* filed a brief for the appellant (plaintiff).

*Kevin M. Black* filed a brief for the appellee (defendant).

LAVINE, J. The plaintiff, Pamela Cianci, appeals from the judgment of the trial court denying her application to discharge a mechanic's lien recorded on her property by the defendant, Originalwerks, LLC. On appeal, the plaintiff claims that the trial court (1) misapplied the law in determining the amount of debt claimed by the defendant and (2) improperly concluded that the defendant filed its lien in a timely manner pursuant to General Statutes § 49-34.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On or about October 20, 2007, the plaintiff and the defendant entered into a contract, valued at $1,776,896, for the construction of a new house. The defendant began its duties on the property with the demolition of the plaintiff's then existing house and site work in preparation for the new construction.

The defendant continued working on the property until July 15, 2008, when the plaintiff told the defendant to cease all activity and to vacate the property because of concerns the plaintiff had with the work being done. The plaintiff also hired a consulting company to review the work completed by the defendant and received a

[1] General Statutes § 49-34 provides in relevant part: "A mechanic's lien is not valid unless the person performing the services or furnishing the materials (1) within ninety days after he has ceased to do so, lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing, which shall be recorded by the town clerk with deeds of land . . . ."

report identifying the major problems. Robert Paltauf, the owner of the defendant company, subsequently e-mailed the plaintiff to notify her that he had been advised by his attorney not to continue construction on her property until the plaintiff identified the claimed problems and discussed them with him.

On September 19, 2008, the plaintiff's attorney provided the defendant's attorney with a list of the identified deficiencies concerning the work performed on the plaintiff's property and requested that the defendant notify the plaintiff when corrections would be made.[2] In response to the plaintiff's report, on September 23, 2008, Paltauf returned to the property to meet with the supplier and the architect of the house, Doug MacMillan. In order to verify the deficiencies listed in the plaintiff's report, Paltauf removed plywood from the house to examine some of the beams and then replaced the plywood once he had completed the inspection. Paltauf also removed some tools from the property, which he had left there when he ceased work in July.

Upon completion of the examination of the property, Paltauf prepared and delivered to the plaintiff a report responding to the plaintiff's report detailing the alleged deficiencies.[3] On October 1, 2008, after Paltauf delivered this report, the plaintiff terminated the contract she had with the defendant.

Shortly after October 1, 2008, Paltauf returned to the plaintiff's property for a second time. During this trip, Paltauf removed some remaining tools and scaffolding from the premises. To remove the scaffolding, Paltauf unbolted wall brackets and removed planks and roof brackets that were attached to the house.

On October 15, 2008, the defendant recorded a mechanic's lien on the plaintiff's property in the amount

---

[2] The claimed deficiencies were, inter alia, improper substitution of materials, failure to pay for material charged to and paid for by the plaintiff, and failure to conform to the plans and specifications.

[3] The report was not admitted into evidence, but Paltauf testified that he did not find any deficiencies in the work the defendant had performed. He also testified that because the construction was not completed, it did not make sense to have somebody go through the house and critique the work.

of $151,647, representing the outstanding value of materials and services furnished in connection with construction of the plaintiff's new house, plus attorney's fees. On November 6, 2008, the plaintiff filed an amended application to discharge the mechanic's lien.

On December 1 and 15, 2008, the court held evidentiary hearings concerning the plaintiff's application to discharge the lien. During these hearings, the plaintiff argued that there was no probable cause to sustain the lien because the amount of money claimed was improper and the lien was not timely filed pursuant to § 49-34, having been filed more than ninety days after the defendant had ceased providing services on the property.

In a memorandum of decision issued on February 20, 2009, the court concluded that there was probable cause to sustain the lien. Concerning the amount of the lien, the court concluded that "[r]eviewing the evidence cumulatively (including Plaintiff's Exhibits B, C, D, E and F),[4] the court finds that while there is some evidence to support the plaintiff's position [that the amount of the lien is improper], it does not reach the necessary level of clear and convincing evidence to justify action under General Statutes § 49-35b (b)."[5] Additionally, the court concluded that the defendant filed the lien in a timely manner. Specifically, the court found that the services rendered by the defendant on September 23, 2008, and thereafter, albeit minimal, were done at the plaintiff's request and were not rendered at the defendant's own initiative to extend the commencement of the ninety day period. Therefore, the court concluded that the lien was timely pursuant to § 49-34. This appeal followed.

[4] On December 2, 2009, this court, sua sponte, ordered the trial court to clarify whether it found persuasive the plaintiff's exhibits 2, 3, 4, 5 and 6 or the defendant's exhibits B, C, D, E and F. The trial court responded that the portion of its opinion in which it stated that it reviewed "Plaintiff's Exhibits" B, C, D, E and F was a scrivener's error and should have read "Defendant's Exhibits."

[5] General Statutes § 49-35b (b) provides in relevant part: "Upon consideration of the facts before it, the court or judge may . . . reduce the amount of the lien if the amount is found to be excessive by clear and convincing evidence . . . ."

I

The plaintiff first claims that the court failed to apply the proper legal standard in determining that there was probable cause to sustain a lien in the amount of $151,647. Specifically, the plaintiff argues that the court improperly relied on evidence concerning the defendant's lost profits and the total value of the contract. We disagree.

General Statutes § 49-33 (a) provides in relevant part: "If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with . . . the owner of the land upon which the building is being erected or has been erected or has been moved . . . then the plot of land, is subject to the payment of the claim." The plaintiff correctly argues that, pursuant to this statute and our case law, a mechanic's lien provides security for the amount of materials furnished or services rendered, rather than for lost profits or the total contract price. The plaintiff, however, has not established that the court relied on evidence concerning the defendant's lost profits or the total value of the contract between the parties in evaluating the amount of the lien.

The court found that the defendant filed a lien on the plaintiff's property in the amount of $151,647, and, in doing so, clearly indicated that the lien was for the value of the materials and services furnished by the defendant. We will not disturb the court's finding unless it is clearly erroneous. See *Dreambuilders Construction, Inc.* v. *Diamond*, 121 Conn. App. 554, 562, 997 A.2d 553 (2010). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing

factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 559–60.

The defendant provided the court with several exhibits that indicated the costs associated with the work performed at the plaintiff's property, the materials used during that work and information concerning amounts owed to various vendors. Specifically, one of the defendant's exhibits indicated the level of completion for each item listed on the original estimate for the construction of the house and provided a revised cost for each item. The court stated in its memorandum of decision that it relied on the defendant's exhibits in concluding that the plaintiff had not established through clear and convincing evidence that the amount of the lien was improper. We conclude, therefore, that the court applied the proper analysis in evaluating the amount of the lien.

## II

The plaintiff next argues that the defendant's actions on the plaintiff's property on September 23, 2008, and thereafter did not constitute services, pursuant to the mechanic's lien statutes. Specifically, the plaintiff claims that the ninety day period for filing the lien began on July 15, 2008, and because the defendant filed the lien on October 15, 2008, it was untimely, as it was filed outside of the ninety day period. We disagree and conclude that the defendant's conduct at the plaintiff's property on September 23, 2008, did constitute "services" as that term is used in the mechanic's lien statutes. Therefore, the defendant filed its lien within ninety days after it last performed services at the plaintiff's property.[6]

---

[6] The court stated in its memorandum of decision that the "services rendered by the defendant on September 23, 2008, and thereafter, though minimal, were done at the owner's request . . . . Thus, the court concludes that the work done in this case was well within the ninety day statutory requirement for the filing of the mechanic's lien." We note, however, that there is no requirement that services or work must be provided within ninety days of any event for a lien to be valid. Instead, the lien itself must be filed

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation. . . . Additionally, statutory silence does not necessarily equate to ambiguity." (Internal quotation marks omitted.) *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 197–98, 3 A.3d 56 (2010).

We first look to the common understanding of "services" for guidance because the term is not defined in the mechanic's lien statutes. "Service" is "the performance of work commanded or paid for by another" or "an act done for the benefit or at the command of another." Webster's Third New International Dictionary. These definitions, however, do not help us reach a determination as to whether the defendant's actions on the plaintiff's property on September 23, 2008, and thereafter constituted "services." We conclude that the word "services" is not plain and unambiguous because it is not apparent whether it encompasses the removal of tools or equipment used while performing work or

within ninety days after services are last provided. See General Statutes § 49-34. In any event, we agree with the trial court decision to deny the application to discharge the mechanic's lien.

inspection of work already performed. We, therefore, next look to the legislative history.

Although the legislative history for the mechanic's lien statutes is limited, our Supreme Court has "discussed the effect of a 1974 amendment to § 49-33 (a) . . . which expanded the scope of the statute to services rendered in the improvement of any lot [or] in the site development or subdivision of any plot of land. . . . [The Supreme Court also] noted that this amendment, in part, eliminated the requirement that lienable services be incorporated or utilized in a building or appurtenance . . . and manifested a legislative intent to expand the scope of coverage of the mechanic's lien statute." (Citations omitted; internal quotation marks omitted.) *Weber* v. *Pascarella Mason Street, LLC*, 103 Conn. App. 710, 716, 930 A.2d 779 (2007). Our Supreme Court also has stated that "references in the statute's legislative history to surveyors and engineers who draft subdivision plans provide some evidence of the types of services that might be embraced by the statute." (Internal quotation marks omitted.) Id., 717, citing *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, 217 Conn. 361, 369, 585 A.2d 1210 (1991).

In other words, our Supreme Court has concluded that "the language of the 1974 amendment appears to have extended the coverage of § 49-33 to two *distinct* types of services: (1) services rendered in the improvement of any lot; and (2) services rendered in the site development or subdivision of any plot of land." (Emphasis in original.) *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, supra, 217 Conn. 366. The court, however, also has concluded that "the statute has not been amended to include services and materials that have not enhanced the property in some physical manner, laid the groundwork for the physical enhancement of the property or that did not play an essential part in the scheme of physical improvement." *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, 241 Conn. 370, 380, 696 A.2d 326 (1997).

We also are guided by the general purpose behind the mechanic's lien statutes. "[I]n Connecticut, the

mechanic's lien is a creature of statute and gives a right of action which did not exist at common law. . . . The purpose of the mechanic's lien is to give one who furnishes materials or services the security of the building and land for the payment of his claim by making such claim a lien thereon . . . . Moreover, [t]he guidelines for interpreting mechanic's lien legislation are . . . well established. Although the mechanic's lien statute creates a statutory right in derogation of the common law . . . its provisions should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials. . . . Our interpretation, however, may not depart from reasonable compliance with the specific terms of the statute under the guise of a liberal construction." (Internal quotation marks omitted.) *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC*, 94 Conn. App. 125, 129, 891 A.2d 133 (2006).

Finally, we turn to prior case law interpreting "services" as used in the mechanic's lien statutes. Generally, "our cases construing [§ 49-33] have required as a condition of lienability that the work done be *incorporated in* or *utilized in* the building to be constructed, raised, removed or repaired or in the improvement of any lot or subdivision." (Emphasis in original.) *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, supra, 241 Conn. 379.

Our Supreme Court addressed the issue of filing a mechanic's lien pursuant to the parameters of §§ 49-33 and 49-34 in *F. B. Mattson Co.* v. *Tarte*, 247 Conn. 234, 719 A.2d 1158 (1998). There, the lienholder began work in connection with the replacement of a deteriorated copper roof on the property owner's mansion in April, 1995, and substantially completed its work on October 3, 1995. Id., 236. On October 10, 1995, the lienholder stopped work on the property but left scaffolding and roofing brackets in place. Id. On that same date, the property owner, which had fallen behind on its payments, transferred its ownership to the property under construction. Id. The new owner subsequently requested that the lienholder remove the scaffolding

and roofing brackets. Id. The lienholder returned on November 10, 1995, and along with two of its employees, worked all day removing the scaffolding and roofing brackets. Id. On January 25, 1996, the lienholder recorded a certificate of mechanic's lien against the property. Id.

After concluding that the commencement of the ninety day period had been extended to November 10, 1995, the court addressed the property owner's claim that the lienholder did not provide lienable services on November 10, 1995. Id., 239–41. The court looked to the language of § 49-33 (a) and stated that the "removal of the roofing brackets from the building's roof was a necessary predicate to removing the plaintiff's equipment from the property. The undisputed testimony was that, in order to remove the roofing brackets from the building's roof, two of the plaintiff's employees, a carpenter and an apprentice carpenter, spent a total of sixteen hours lifting shingles, removing nails from the shingles, sliding out the roofing brackets, replacing the nails, tarring the nail holes and retarring the shingles in place. We conclude, therefore, that, under those circumstances, removal of the roofing brackets from the building's roof was part of the *repair of the building* and, as such, was a lienable service pursuant to § 49-33."[7] (Emphasis in original.) Id., 241–42.

In *36 DeForest Avenue, LLC* v. *Creadore*, 99 Conn. App. 690, 915 A.2d 916, cert. denied, 282 Conn. 905, 920 A.2d 311 (2007), this court also addressed the meaning of services under the mechanic's lien statutes. The lienholder in *36 DeForest Avenue, LLC*, had entered into an

---

[7] The court did recognize, however, that under the circumstances of *Martin Tire & Rubber Co.* v. *Kelly Tire & Rubber Co.*, 99 Conn. 396, 122 A. 102 (1923), pursuant to Connecticut law, "preparation for removal and the removal of the [contractor's] equipment . . . [is] [not] the rendition of such service as would warrant the filing of a mechanic's lien . . . ." (Internal quotation marks omitted.) *F. B. Mattson Co.* v. *Tarte*, supra, 247 Conn. 241. In *Martin Tire & Rubber Co.*, the court concluded that the lienholder provided lienable services, not because it had removed tools from the property, but because the alteration of the building, and the cleaning up of the building, was work that was a necessary part of the construction of the building, and was work and service for the exclusive benefit of the owner. *Martin Tire & Rubber Co.* v. *Kelly Tire & Rubber Co.*, supra, 403.

informal agreement to construct a residential apartment onto a commercial building owned by Steven Karantonis. Id., 692–93. The lienholder had undertaken several improvements to the property when Karantonis fell ill and passed away. Id., 692. Karantonis' daughter sold the property; id.; and the lienholder, on January 27, 2005, filed a mechanic's lien on the property to secure payment for a portion of the work already done. Id., 693. The new owner then filed an application to have the lien discharged, but the trial court denied the application, concluding that the mechanic's lien had been filed within ninety days of the final work performed on November 1, 2004. Id., 693–94.

This court affirmed the judgment of the trial court and concluded that the lienholder's conduct was part of an ongoing project, and, therefore, the lien was timely, because the work performed on November 1, 2004, was part of that same project. Id., 694. The court also found that the work performed by the lienholder constituted lienable services under § 49-33. Id., 698. This work included using wrenches to shut off the hot water heater in the building and drain the water out, turning off the gas, winterizing the building, resetting the temperature on the thermostat, changing the filter in the furnace, and checking the heating system to make sure the heat was going to be adequate for the winter. Id., 698 n.12.

In the present case, although the work performed on the plaintiff's property on September 23, 2008, was clearly less extensive than the lienable services provided in some of our prior cases, we conclude, nonetheless, that the defendant did provide lienable services and, therefore, extended the ninety day period for filing the mechanic's lien. Paltauf returned to the plaintiff's property on September 23, 2008, in direct response to the report he had received from the plaintiff detailing the alleged deficiencies in the work performed up until July 15, 2008. Paltauf testified that he went to the property with the architect, who had been hired by the plaintiff, so that they could "answer their report in detail." While on the plaintiff's property, Paltauf removed plywood from the house with a hammer to

expose some beams so that he could acknowledge their size. He then replaced the plywood. Paltauf later created a report to answer the complaints the plaintiff had with the work, and, in response to this report, it was the plaintiff who terminated the contract she had with the defendant. There is no basis for this court to conclude that Paltauf went to the plaintiff's property on September 23, 2008, with the goal of providing trivial services solely to extend the commencement of the ninety day filing period.[8]

As noted, our mechanic's lien statutes are to be construed liberally in order to implement their remedial purpose of furnishing security for one who provides services or materials. See *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC*, supra, 94 Conn. App. 129. Given the intent and purpose of § 49-33, a narrow construction of the term "services" is not proper under these circumstances. In response to the plaintiff's demands, the defendant returned to the plaintiff's property, undertook an inspection, which included the removal of materials from the house, and their replacement, and provided a written response to the plaintiff's list of complaints. This work was performed prior to the termination of the defendant's services. We conclude that, given the circumstances of this case, the inspection constituted laying the groundwork for the physical enhancement of the property and, therefore, constitutes lienable services. See *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, supra, 241 Conn. 380. The fact that the defendant did not continue to work on the project does not change our conclusion.[9]

---

[8] When asked why he listed, on the mechanic's lien, October 1, 2008, as the approximate date on which the defendant stopped providing goods and services to the plaintiff, Paltauf responded: "I believe, I was still the general contractor on this project until that—that date that it came across, I was waiting to respond to the report and be able to go back—go back and fix any deficiencies that [are] outlined in our contract. The contract, specifically, says that I have the right to fix any deficiencies that I may have—may have done, so, I—I, certainly, anticipated me going back and fixing anything that may—may have been wrong. So, I thought I was working there, literally, until that date."

[9] Because we conclude that the defendant provided services by laying the groundwork for the physical enhancement of the property on September

We conclude that the work performed by the defendant at the plaintiff's property on September 23, 2008, constituted "services" as used in our mechanic's lien statutes. Accordingly, the defendant filed its lien within ninety days after it last provided services at the plaintiff's property.·

The judgment is affirmed.

In this opinion the other judges concurred.

23, 2008, we do not reach the issue of whether the removal of the scaffolding and roof brackets after October 1, 2008, further delayed the commencement of the ninety day filing period, given the circumstances of this case.